MRS. MARY SMITH, WIDOW OF JOHN C. SMITH (CLAIMANT), RESPONDENT, v. LEVIS-ZUKOSKI MERCANTILE COMPANY, A CORPORATION (EMPLOYER), AND GLOBE INDEMNITY COMPANY (INSURER), APPELLANTS.*— 14 S. W. (2d) 470.

St. Louis Court of Appeals.   Opinion filed March 5, 1929.

---

*Corpus Juris-Cyc References: Workmen's Compensation Acts, CJ, section 114, p. 115, n. 37; section 127, p. 123, n. 47.

*Jones, Hocker, Sullivan & Angert* for appellants.

*S. E. Garner* for respondent.

BENNICK, C.—This action was commenced by the filing of a formal claim for compensation under the provisions of the Workmen's Compensation Act, with the Missouri Workmen's Compensation Commission, on April 27, 1927, by Mary Smith, widow of John C. Smith, against Levis-Zukoski Mercantile Company, the employer of the deceased, and Globe Indemnity Company, the insurer. After a hearing before the commission, an award was entered in favor of the claimant, in the sum of $12 a week for three hundred weeks, together with $150 for burial expenses, or for an aggregate sum of $3750. Upon an appeal duly taken to the Circuit Court of the city of St. Louis, an order was entered affirming the findings of the commission, from which, after an unavailing motion for a new trial, the employer and insurer have jointly appealed to this court.

The claim is one for compensation for the death of claimant's husband by accident, alleged to have arisen out of and in the course of his employment with Levis-Zukoski Mercantile Company. The answer of appellants denied that the injuries resulting in his death arose out of and in the course of his employment, and averred that his injuries were self-inflicted, with suicidal intent, or while he was temporarily insane.

About ten o'clock, on the morning of January 10, 1927, John C. Smith, fifty-five years of age, a trusted employee of Levis-Zukoski Mercantile Company for a period of ten years, was found dead in the bottom of an elevator shaft, in the latter's place of business at 1113 Washington Avenue, in the city of St. Louis. The employer's building was seven stories high; and it appears that in the elevator shaft referred to, extending from the top floor to the basement, three elevators were run, two for passengers, and one

for freight service, although one of the passenger elevators could not be lowered to the basement level. The body of the deceased was found in the bottom of that portion of the shaft in which the freight elevator ran.

There was a stairway which extended up beside the elevator shaft from the basement; and, to prevent one using the stairway from falling into the shaft, a heavy, immovable wire screen or grating was constructed as a guard between the open side of the stairway and the shaft. This screen was estimated as being one inch in width, and varied in height from ten or eleven feet on the lower floor, to five feet six inches from the top step of the sixth floor, which latter measurement is of particular significance, as will hereafter appear. Between the top of the grating and the floor immediately above, there was, in each instance, an open space of approximately three feet.

Smith was employed as a porter; and, while his general duties were to sweep, dust, shine the brass, run errands, and perform such other occasional tasks throughout the entire building and elsewhere as might be assigned to him, the evidence was that his regular duties were confined exclusively to the second, third, and fourth floors, and that other men were assigned to look after the basement and the remaining floors. All sweeping was done each morning before the store opened at eight o'clock, after which the windows would be cleaned; and once or twice each month, between the hours of eight and twelve in the forenoon, the porters would take brooms and give the stairway a thorough cleaning from top to bottom, and at the same time wipe the dust from the top of the screens with their brooms. There was testimony, however, that, on the day of Smith's death, the stairway and screens were not being cleaned.

As an exception to the above, it should be particularly noted that the porters had nothing whatever to do with sweeping or cleaning out the elevators or elevator shaft, or cleaning the bottoms of the elevators, all of which work was invariably done by members of the engineering department which had the elevators in charge. So far as the evidence goes, the only duty that the porters had in connection with the elevators was to relieve the regular operators of the passenger cars. It is true that there was testimony of one isolated instance when Smith had removed the body of a dead rat from underneath the stairs at the bottom of the elevator shaft, but on this occasion the door had been opened by the elevator operator for Smith to enter, and the car raised a slight distance. In fact, it is pertinent to add that the elevators were equipped with automatic locks so that the gates could not be opened from the outside; and that, on the day of the accident, and following the same, the cars were found to be in perfect working order, and all gates closed.

On the morning in question, Smith arrived at his work at 6:40 o'clock—ten minutes late—and immediately went to the basement to don his working clothes. At that time, he complained that he was not feeling well, and his movements were sufficiently unusual to prompt certain fellow employees to inquire as to his condition. As a matter of fact, Smith agreed to consult a physician, and was then taken to the front entrance, where he might wait until another porter had completed his work, so that he might be free to accompany him to the doctor's office. Shortly afterwards, however, Smith appeared upon the second floor, and began sweeping, although it was noticeable that his movements at work were not of their accustomed character.

The peculiarity in Smith's actions had been observed for the last week or two prior to the date of his death. Whereas he was ordinarily of lively and sociable disposition, throughout such period of time he had appeared dissatisfied with his situation, and had told his fellow workmen that he was sick. There was evidence, however, from persons who had come in contact with him away from his place of employment, that he had acted in a normal manner, and had made no complaints to them as to the state of his health.

The last work in which Smith was seen to have engaged was the moving of two tables from an adjoining building into the main office on the first floor, after which he went down the steps into the basement. He was next seen by a young woman who was standing on the fifth floor, waiting for one of the passenger elevators. She testified that she happened to look into the shaft, and saw Smith sliding down the rope attached to the bottom of one of the elevators, between the sixth and fifth floors. In reality, the rope was an electric cable, insulated with a rubber composition covered with cloth. Smith was holding to the cable with one hand, and was moving rather fast as he passed the witness. She further testified that the cable itself was not moving at the time, indicating that the elevator to which it was attached was stationary at some one of the floors above the fifth.

After Smith's body was discovered in the bottom of the shaft, a general investigation was started, and it was found that the dust on the top of the screen on the sixth floor had been wiped away for a space of two and a half or three feet on one side only, but further search disclosed that the dust had not been disturbed on the tops of any of the other screens. No broom was found, either on the stairway, or in the elevator pit. Later, Smith's cap was seen lodged on one of the fixed elevator controls in the shaft opposite the third floor.

An inspection of the body at the morgue disclosed grease on both hands, and a mark, as of a rope burn, inside the right hand, thus

bearing out the testimony of the girl who had seen Smith sliding down the cable past the fifth floor. The autopsy showed multiple fractures of the lower limbs, and of the bones of the body proper, but only slight bruises and abrasions on the head, indicating as expressly found by the commission, that he was not crushed, but that he had fallen from a considerable height.

At the time of the rendering of the award, the commission made a finding of facts, the substance of which was that Smith's death was caused by his falling into an elevator shaft, while cleaning the screen guarding the shaft beside the stairway at the turn of the stairs on the sixth floor; that it was due to accident arising out of and in the course of his employment; and that it was not attributable to suicide or mental aberration.

The rulings of law made by the commission were threefold: First, that the burden of proving that the death of the employee was by accident arising out of and in the course of his employment, was upon the dependents, while the burden of proving that death was due to intentional, self-inflicted injury was upon the employer; second, that the dependents might sustain their burden of proof by direct and positive evidence, or by facts and circumstances from which an inference of accident arising out of and in the course of the employment, might fairly be drawn; and, third, that, when, during his regular working hours, the dead body of an employee was found in an elevator shaft, into which he could have fallen from a place where his regular duties would have taken him, it was a reasonable inference, in the absence of evidence to the contrary, that the death was by accident arising out of and in the course of his employment.

Appellants' assignment of errors brings to our attention two of the grounds for appeal enumerated in section 44 of the Act (Laws 1927, pp. 490-522), namely, that the facts found by the commission do not support the award, and that there was not sufficient competent evidence in the record to warrant the making of the award.

Strictly speaking, it is only the second of such assignments that we shall be called upon to consider, since the facts actually found by the commission do support the award made. By this we mean that, if it be once conceded, as the commission found, that Smith came to his death while cleaning the screen guarding an elevator shaft on the sixth floor, there could doubtless be no sound argument advanced against the propriety of his widow's right to be compensated, absent proof of intentional, self-inflicted injury. Our task, therefore, is to determine as a matter of law whether there was sufficient competent evidence adduced, together with the fair and reasonable inferences of fact legitimately deducible therefrom, to justify the finding made by the commission upon which the claimant's right to compensation was based. Not only is the extent of our review

so limited by the statute, but such is the accepted rule of appellate practice, as has been announced by eminent courts of other jurisdictions in the disposition of this type of litigation. [Kiser on Workmen's Compensation Acts (40 Cyc.), sec. 127; 2 Schneider on Workmen's Compensation, sec. 561.]

Looking first to the scope of the act, we find that by section 3 thereof it is provided that the employer shall be liable, irrespective of negligence, to furnish compensation for the personal injury or death of an employee "by accident arising out of and in the course of his employment;" and, in view of the phraseology thus used, and the legal effect to be attributed to it, a very difficult question is at once presented in regard to whether the facts of this case are such as to cast liability for compensation upon the employer.

The Legislature itself, in subdivision b of section 7 of the act, has definitely construed the word "accident," as used therein, to mean "an unexpected or unforseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." However, as respects the clause "arising out of and in the course of his employment," it made no attempt to give a full and comprehensive definition, other than to say, in subdivision c of section 7, that it did not cover workmen "except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such services."

Looking for further guidance, therefore, to the decisions in other jurisdictions whose compensation laws are of the same or similar purport as our own, we find that the phrases "out of" the employment, and "in the course of" the employment, are not synonymous, but that such expressions are independent of each other, so that the proof of one does not establish the other. Furthermore, the inclusion of both elements in the act makes it obligatory upon the claimant to prove that the injury or death of the employee arose, not only "in the course of" his employment, but also "out of" his employment; and a showing of either element, alone, without the other will not be sufficient to justify the rendering of an award.

The consensus of authority is to the effect that an injury to an employee arises "in the course of" his employment, when it occurs within the period of his employment, at a place where he might reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in the performance of some task incidental thereto. Necessarily, the converse of the rule must also apply, so that, where, at the time his injury is received, the employee is engaged in a voluntary act, not known to, or accepted by, his employer, and outside of the duties for which he is employed, the injury cannot be said to have been received in the course of his employment. [Kiser

on Workmen's Compensation Acts (40 Cyc.), secs. 72-77; 1 Schneider on Workmen's Compensation, secs. 262-281.]

Likewise it is commonly held that an injury may be said to arise "out of" the employment, when it is reasonably apparent, upon a consideration of all the facts and circumstances, that a causal connection exists between the conditions under which the employee's work is required to be done, and the resulting injury. In other words, an injury arises out of the employment if it is a natural and reasonable incident thereof, even though not forseen or anticipated; but, in all events, it must be the rational consequence of some hazard connected therewith. [Kiser on Workmen's Compensation Acts (40 Cyc.), secs. 64-65; 1 Schneider on Workmen's Compensation, secs. 262-281.]

Passing now to the merits of the case proper, and viewing the evidence in the light of the interpretation to be put upon the vital language of the act, we readily conclude that the claimant wholly failed to show a state of facts from which it is in anywise inferable that her husband came to his death by accident arising out of and in the course of his employment, unless upon the assumption, as found by the commission, that he was engaged at the time in cleaning the screen guarding the elevator shaft on the sixth floor. Upon the issue thus determined, counsel for appellants argue most earnestly that the inference drawn by the commission as the basis for its finding, and affirmed by the lower court, was unwarranted, with which contention we are forced to agree.

While recognizing that the claimant's right to compensation was based upon circumstantial evidence, that is, upon an inference as to the duty in which deceased was engaged at the time he entered the shaft, the commission reasoned that a part of the duty of the deceased was to clean the stairway and the screens; that the pleaded defense of suicide or mental aberration had not been established; and that, since the body of the deceased was found on the premises of his employer, at or near the regular place of service, under circumstances fairly indicating accidental death, the inference might fairly be drawn that the deceased came to his death by accident arising out of and in the course of his employment.

With due respect to the force of the commission's reasoning, it strikes us at the outset that its conclusion was reached without regard to the effect of subdivision c of section 7 of the act, to which reference has heretofore been made, providing that, without otherwise affecting either the meaning or interpretation of the clause "arising out of and in the course of his employment," the same was declared not to cover workmen "except while engaged in, or about the premises, where their duties are being performed, or where their services require their presence as a part of such services." As we

understand the meaning of such section, its unmistakable purport is that a mere showing that the employee was injured by accident occurring on the premises of his employer, at or near the regular place of service, does not serve to establish liability under the act. In other words, the fact that the employee was on the premises during his regular working hours, and was injured, will of itself form no basis for the presumption that the accident arose out of and in the course of his employment.

Furthermore, conceding that it was a part of the duties of the deceased to clean the screens in question, we cannot believe that it is fairly and legitimately inferable, even from the facts most favorable to the claimant's right to recover, that he was so engaged at the moment of his misfortune. The evidence shows that, while the stairways and screens were cleaned at intervals of once or twice each month, such work was not being done on the day in question; that the procedure in cleaning the screens was to wipe off the dust with a broom, but that in this instance no broom was found, either on the stairway, or in the pit; and that the dust on the tops of the other screens had not been disturbed, nor, in fact, on the one on the sixth floor, save for that small portion over which the deceased must have climbed. Indeed, considering that the screen was five feet six inches in height, and only one inch in width, the conclusion that an experienced workman of ordinary intelligence would have climbed in a precarious position upon it, and have subjected himself to the imminent danger of falling six stories below into an open elevator shaft, is utterly repugnant to common sense and human knowledge, the very fundamentals of an inference. Besides, there was a space of only eight or ten inches between the screen and the body of the elevator, a fact not heretofore stated, in view of which the deceased, if he was in full possession of his faculties, as the commission found, could not reasonably have been expected to believe that he could have cleaned the screen while sitting upon it without either being crushed or dislodged by an ascending or descending elevator.

We repeat that, in our view of the case, the finding that the deceased was engaged in cleaning the screen at the time of the accident is not a reasonable and legitimate inference, but must rest solely upon surmise, speculation, and conjecture. Consequently, since the claimant failed to bear her burden of adducing sufficient competent evidence fairly justifying the inference that the deceased came to his death by accident arising out of. and in the course of his employment, the award of compensation to her may not be allowed to stand.

The result is, therefore, that the award of the commission, and the judgment of the circuit court affirming it, must be reversed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The award of the commission, and the judgment of the circuit court affirming it, are, accordingly, reversed. *Becker* and *Nipper, JJ.*, concur; *Haid, P. J.*, not sitting.