FLORENCE BEECHAM, RESPONDENT, v. GREENLEASE MOTOR COMPANY ET AL., APPELLANTS.—38 S. W. (2d) 535.

Kansas City of Appeals. February 16, 1931.

*J. Frances O'Sullivan* and *Joseph H. Brady* for respondent.

*Maurice J. O'Sullivan* and *N. E. Snyder* of counsel.

*James H. Parsons* and *Mosman, Rogers & Buzard* for appellants.

CAMPBELL, C.—This action is based upon the Workmen's Compensation Act.

On September 7, 1928, plaintiff, as claimant, filed a claim with the Workmen's Compensation Commission in which it is stated that Roy Beecham was an employee of the defendant, Greenlease (Cadillac) Motor Company; that said employee, on June 4, 1928, met with an accident arising out of and in the course of his employment, from which he died nine days later; that the name of the insurer is United States Automobile Insurance Exchange; that she was the wife of the employee, at the time of injury, and that she was wholly dependent upon him for support.

The claim was heard before a commissioner who, on January 18, 1929, made an award therein in which it is stated that said commissioner found in favor of the defendants and against the plaintiff, and awarded no compensation for the accident, and that the evidence is not sufficient to support a finding that there was any dependency upon the deceased. That award was reviewed by the entire commission which made an award in favor of the defendants, against plaintiff, and affirmed the award of January 18, 1929. From that award the plaintiff appealed to the circuit court where the same was heard on the 5th day of March, 1930, at which time that court made findings of fact based upon the evidence transmitted to it by the commission, and rendered judgment against the defendants and in favor of plaintiff in the sum of $4584.

At the hearing before the commissioner the plaintiff testified that she and the employee were married to each other at St. Joseph, Missouri, on June 9, 1917, and that they continued to live together until the year 1921, at which time she went on a visit to Gary, Indiana; that her husband intended to go to Gary but did not do so; that after the lapse of about one year she returned to St. Joseph for a visit; that during her absence the employee sent her money from time to time; that the employee, after she went to Gary, lived with his mother in St. Joseph for a time and in 1926 moved to Kansas City; that in January, 1927, she received a letter from the employee in which it is stated he was convinced that she did not care for him and he intended to give her up; that in May, 1927, while passing through Kansas City, she called the employee over the telephone and he, at that time, said to her, "yes, he had got the divorce in March." She further said that others had told her that the employee had obtained a divorce; that on the 28th day of June, 1927, she went with one Waddell Pendleton to Chicago and made application for a marriage license; that the license was issued and thereafter, on the same day, she and Pendleton were married to each other.

In the application it is stated that plaintiff is twenty-eight years of age, name Miss Florence Beauchamp, and that she is single and unmarried. To this application, which is verified, plaintiff signed

the name Florence Beauchamp. When asked why she used that name she said: "I had no reason for it." Thereafter the parties to the contract lived together as husband and wife until after the death of the employee, at which time they separated and have since remained apart.

Plaintiff further testified that she met Pendleton some years before the marriage while attending a dance in Chicago; that she engaged to marry him a week or two before the marriage; that she had been keeping company with him for about one year before the marriage; that Pendleton lived in Chicago, she in Gary, at which place he visited her.

"Q. Kind of sweethearts, weren't you? A. I guess that's what you would call it." . . . He was my company for a year before I married him."

Plaintiff further testified that during the time she was in Gary she worked in a lawyer's office and was commissioned as a notary public in the name of Beecham. She gave no evidence tending to show any cause for living apart from her husband.

Plaintiff proceeds upon the theory that the employee had not obtained a divorce, and there is evidence to that effect. It was the peculiar province of the commission to determine the facts. The plaintiff admitted a bigamous marriage and sought to justify the same on the ground that the employee had, about one month before she contracted such marriage, told her in a 'phone conversation that he had obtained a divorce. The value of her explanation was solely for the commission. In addition to the foregoing plaintiff testified that for about a year before the bigamous marriage she had a sweetheart in the person of the other party to the last named marriage. She gave no reason for leaving or deserting, if she did desert the employee, nor reason that would justify her in living apart from him.

It is provided in section 21 of the Compensation Act that the word dependent, as used therein, shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon the wages of the employee at the time of the injury, and that among persons who shall be conclusively presumed to be totally dependent is "a wife upon a husband legally liable for her support." It is thus apparent that the mere fact that plaintiff was the wife of the employee is not sufficient to conclusively show that he was legally liable for her support. Plaintiff's own evidence shows that she was not actually dependent upon him for support. Plaintiff is, therefore, not entitled to compensation unless the employee was, at the time of injury, "legally liable for her support." If plaintiff's marriage to Pendleton was contracted with a disregard on her part of whether the former marriage had

been dissolved, then, of course, the employee was not legally liable for her support. The determination of that question was solely for the commission. Under the circumstances, upon the record, was the circuit court warranted in making independent findings of fact based upon the evidence taken by the commission? The statute expressly withholds that power.

The plaintiff and defendants agree that the Workmen's Compensation Commission did not make findings of fact, but there is lack of harmony on all other questions. The defendants insist the circuit court was without authority of law to make findings of fact based upon the evidence heard by the commission. The plaintiff argues, as we understand, that the commission having failed to find the facts, the court below had the power and it was its duty to ascertain and determine the facts and render judgment upon such findings. The Workmen's Compensation Act not only vests in the commission the power to find the facts in all cases which arise under the act but expressly withholds that power from circuit courts and appellate courts. A circuit court and an appellate court may, when the question is properly presented, determine whether the findings of fact by the commission are supported by sufficient competent evidence. But the value of the evidence, as well as the reasonable inference to be drawn therefrom, is for the commission and not for any of the constitutional courts.

In the instant case it was the province of the commission to determine from the evidence whether plaintiff, at the time she contracted the second marriage, acted in good faith, believing the employee had obtained a divorce. The commission had the right to believe or disbelieve her evidence on that subject, and its findings thereon on that issue, had they been made, would be conclusive in all courts. If the question as to whether plaintiff acted in good faith in contracting the second marriage was the only one presented by the record, we would reverse the judgment and remand the cause to the end that the commission might make findings of fact on that question; that is, find the fact as to whether plaintiff was innocent of wrong doing at the time she contracted the admittedly bigamous marriage; but there is another question in the record that precludes the allowance of an award in favor of the plaintiff.

The plaintiff testified that continuously for many months before the employee told her he had obtained a divorce she was keeping company with Pendleton, the other contracting party to the bigamous marriage; that Pendleton lived in Chicago, she in Gary; that they were sweethearts; that he was "my company" for about one year before the marriage. Thus she judicially admits she was a faithless wife. By that admission she is bound.

It is argued by plaintiff that it is the duty of the husband to support the wife and that the husband is legally liable to support the wife, and many cases so hold. Those pronouncements are made in cases in which the wife had not, by a course of conduct, forfeited the rights accruing to her by virtue of the marriage contract.

In the case of Rutledge v. Rutledge, 177 Mo. App. 469, 474, 119 S. W. 489, the court said: "It is true the husband, at the altar, agreed to support and maintain his wife. This obligation is modified, however, by the law to the extent that it obtains while she properly demeans herself as a wife and companion."

In the case of Cotter v. Valentine Coal Company, 14 S. W. (2d) 660, 663, it is said: "If he (the husband) left her on account of her fault or conduct he would not be legally bound to support her."

Plaintiff's admittedly wrongful conduct was such that the employee was not, at the time of injury, "legally liable for her support." Upon the admission of plaintiff being made, as the record reveals, the commission was without right to render an award in her favor, and if the commission had rendered an award in her favor, it would have been the duty of the circuit court when the case was transmitted to it, as well as the duty of this court, if the case came here by appeal, to set aside the award because the admission so made by plaintiff, as a matter of law, shows the employee, at the time of injury, was not legally liable for her support.

We do not hold there is sufficient legal evidence in the record to show that the employee fraudulently induced plaintiff to believe, and that she did in good faith believe that a divorce had been granted, and, so believing, contracted the second marriage. [State v. Trainer, 232 Mo. 240, 134 S. W. 528.] What we have said on that subject is based on the theory advanced by defendants, a theory by which they are bound.

It is not necessary to pass on other questions presented by appellants.

It is apparent no useful purpose would be served by remanding the cause. The judgment is therefore reversed. The Commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is hereby adopted as the opinion of the court. The judgment is reversed. All concur, except *Trimble, P. J.,* absent.