LILLIAN KENSER, RESPONDENT, v. ELY & WALKER DRY GOODS CO., A CORPORATION AND AMERICAN MUTUAL LIABILITY INSURANCE CO., A CORPORATION, APPELLANTS.—48 S. W. (2d) 167.

Springfield Court of Appeals. March 7, 1932.

*Wm. R. Schneider* and *J. J. Cooney* for appellants.

*H. C. Blanton* for respondent.

SMITH, J.—This is an appeal from the circuit court of Dunklin county reversing the order, decision, findings and award of the Missouri Workmen's Compensation Commission and remanding said cause to the Commission.

The plaintiff claimed that she was hurt on October 17, 1929, while employed by Ely & Walker Dry Goods Company, at its factory located at Kennett, Missouri. There is no question as to her employment at the time of the alleged injury, and no question as to her filing of a claim and the form thereof, nor is there any question as to the American Mutual Liability Insurance Company being the insurer.

A claim was filed in time, a hearing was had before the Commission, and the decision of the Commission was as follows:

"The undersigned (the full Commission) hereby find in favor of the above employer and insurer and against the above employee and award no compensation for the above alleged accident. For the reason that employee's condition is not the result of accident arising out of the course of her employment, but is due to cause independent of said employment."

The plaintiff took an appeal to the circuit court, and the record and evidence heard before the Commission was presented to the court and on July 24, 1930, the circuit court rendered the following judgment:

"The above matter coming on for hearing before the court to review an award of the Workmen's Compensation Commission of the State of Missouri, and the employee appearing by her counsel, H. C. Blanton, and the employer and insurer appearing by their coun-

sel, J. J. Cooney, is now taken up by the court and after hearing the same the court finds that there was not sufficient competent evidence in the record to warrant the Workmen's Compensation Commission of Missouri in making the award it did in favor of the employer and insurer, but the court finds that the employee's condition is the result of an accident arising out of and in the course of her employment and that the award of the Compensation Commission is, therefore, erroneous. It is, therefore, the order and judgment of the court that the employee, Lillian Kenser, is entitled to compensation under the provisions of the Workmen's Compensation Act, and it is the further order and judgment of the court that the cause be remanded to the Workmen's Compensation Commission of the State of Missouri with directions to ascertain and award to the employee the compensation due her by law and that the employee recover of and from the employer and insurer her costs in this behalf laid out and expended.''

It is from this judgment that the appeal is taken.

The defendants contend, and with that contention the plaintiff agrees, that the only question before this court is, ''Is there sufficient competent evidence in the record to support the finding, decision, and award of the Commission?''

The material parts of the claim for compensation filed with the Commission is as follows:

''2. Names and addresses of all claimants: Lillian Kenser, R. F. D. No. 1, Morely, Missouri.

''3. Names and addresses of all employers: Ely-Walker D. G. Company, Kennett, Missouri.

''4. Names and addresses of all insurers: American Mutual Liability Ins. Company, 305 Buder Bldg., St. Louis, Missouri.

''5. Injured employee's name: Lillian Kenser.

''6. Average weekly wages: $12.

''7. Date of accident: October 17, 1929.

''8. Hours: About ten A. M.

''9. Place of accident: In the shirt factory, Kennett Street, Kennett, Missouri.

''10. Did injury result in death? No.

''11. Parts of body injured: Almost entire body.

''12. Weeks of temporary disability to date: fifteen.

''13. Weeks of probably future temporary disability: fifty-two.

''14. Exact nature of any permanent injury: Right hand and wrist probably permanently disabled.

''15. How accident happened, cause, and work employee was doing for employer at the time: It was the duty of the employee to sprinkle or spray shirts, which had been dyed, and then iron the same, and after ironing, to pin the shirts. While engaged in pin-

ning one of the shirts, employee accidently stuck a pin in the middle finger on the right hand, which became infected and poisoned from the dye used on the shirts. Shortly thereafter and on the same day, employee observed that the point where was pricked by the pin, first in the finger and then the hand, became painful, inflamed and swollen and gradually spread to almost her entire body.

"17. Total compensation paid to date, $: Nothing.

"18. Total value of compensation claimed, $220 plus doctor bills to date, plus future compensation.

"19. Dated: January 30, 1930."

The part of the answer to claim for compensation, material here, is as follows:

"All of the statements in the claim for compensation are admitted except the following: It is denied that employee received an accidental injury arising out of and in the course of her employment, resulting in disability. It is averred employee's condition is the result of disease."

The case is before us on the following assignments of error:

"1. The court erred in setting aside an award of the Missouri Workmen's Compensation Commission because said award was based upon a finding of facts adequately supported by the record.

"2. Findings of fact by the commission supported by evidence in the record is conclusive and binding upon the courts on appeal and the court erred in setting aside the award based on such findings.

"3. The court erred in that it did not reverse, set aside the award, and remand the cause for any one of the four statutory grounds mentioned in section 3342, Revised Statutes of Missouri, 1929, which are the only grounds upon which an award can be set aside and remanded."

This necessitates a consideration by us of the circuit court's duty and power in case of an appeal from the final award of the Commission, and a consideration of the testimony offered in this case.

Section 3342, Revised Statutes 1929, provides for an appeal from the Commission to the circuit court, and specifically provides what shall be included in, and become the record before the circuit court, and provides as follows: "Upon appeal no additional evidence shall be heard and in the absence of fraud, the finding of facts made by the Commission within its powers shall be conclusive and binding. The court on appeal, shall review only questions of law and may modify, reverse, remand for rehearing or set aside the award upon any of the following grounds and no other:

1. That the commission acted without or in excess of its powers.

2. That the award was procured by fraud.

3. That the facts found by the commission do not support the award.

4. That there was not sufficient competent evidence in the record to warrant the making of the award."

It is seen from the foregoing statute that one of the powers of the circuit court is to remand the cause for rehearing if the court finds that there was not sufficient competent evidence in the record to warrant the making of the award. A reference to the court's judgment, heretofore set out in full, will show that is exactly what the court did find. The court used almost the exact language of the statute, viz: "The court finds that there is not sufficient competent evidence in the record to warrant the Workmen's Compensation Commission of Missouri in making the award it did . . ." Certainly by statutory provision the trial court had a right to go that far. Our appellate courts have so held in numerous recent cases. [De Moss v. Brick Company (Mo. App.), 37 S. W. (2d) 961; Beecham v. Greenlease Motor Company et al. (Mo. App.), 38 S. W. (2d) 535, 537; Wood v. American Coal & Ice Co. (Mo. App.), 25 S. W. (2d) 144.]

The court had a perfect right to pass on the sufficiency of the evidence, and it is up to us now to determine as a matter of law whether or not there was sufficient competent evidence adduced, in the hearing before the trial court, to justify the finding made by the commission in denying the plaintiff's claim and whether or not the court erred in holding the evidence insufficient. [Smith v. Levis-Zukoski Merc. Co. (Mo. App.), 14 S. W. (2d) 470, 472.] This requires a review of the testimony.

Lillian Kenser, the plaintiff, employee, testified that in October, 1929, she was employed by the defendant, employer in Kennett, Missouri, where she had been working about one year and one week; that her duties consisted of sprinkling freshly dyed shirts, after which she would iron and pin them up. That she had had a headache and had lost a day or two from time to time on account of sinus trouble, but had never taken off a week or two at any time on account of sickness; that about ten o'clock A. M., on October 17, 1929, she pricked her finger and after she had stuck it, it became red and swollen and that about three o'clock that afternoon she put iodine on it, but had had no trouble of any kind with her hand prior to that time; that she thereafter went to Dr. U. A. V. Presnell of Kennett for treatment; that he gave her some salve, which she changed every thirty minutes and which salve was badly discolored after it was removed from the affected area; that she took treatment about one week from Dr. Presnell, after which time she went to her home near Sikeston and then started taking treatment from Dr. McClure in that town; that Dr. McClure lanced her hand three times; that upon the request of the insurer, she went to St. John's Hospital in St. Louis, where she stayed five days for treatment of similar

nature to that given her by Dr. McClure; that one of her knees, ankle and right arm to the elbow became so swollen and blue and red looking; the pain was most severe in her wrist; that at no time prior to the pin pricking and infection had she ever been bothered with her fingers and wrist; that the scar (exhibited to referee who heard this testimony, the second joint) did not exist prior to the infection, nor had she had any trouble with her fingers and hand until she pricked herself with the pin.

On cross examination, she testified that she had lost no time during the months of July or August because of sinus trouble and what time she was away from her employment was spent in taking a vacation and once in awhile would take a half day out of the week off on account of sinus trouble; that she had had either rheumatism or neuralgia in 1916 (thirteen years before the trouble in controversy); had never been bothered much with sore throat, and had not been bothered with sinus trouble for the last two years. She reported her difficulty to Violet Crawford at the time of the accident.

On re-direct examination she testified that she did remember scratching her finger with the pin and that nothing had happened to her hand or to her finger from sinus trouble before the pin scratch; that Mrs. Hagey (who was the floorlady) knew of her pin scratch and infection on the same day because plaintiff was boarding with her and her daughter-in-law helped dress her hand.

Mrs. Violet Hagey testified on behalf of the plaintiff that she remembered plaintiff coming home from the shirt factory and complaining about her finger and saying she had scratched it on a pin; that she helped dress her hand three or four times a day and applied a salve thereto; that her finger was swollen and around the place where it had been scratched it was black and inflamed. Witness testified that plaintiff did not have any infection on her finger before she complained of the pin scratch, and that although witness had known her for something over a year, she had never complained of stiffness in her finger nor did she have a swollen forearm.

On cross-examination, witness testified that plaintiff had had trouble with her head and remained away from work from time to time about a half a day, but she did not remember that she was ill so much since Christmas, 1928.

Violet Crawford, on behalf of plaintiff, testified that she worked at the same table with her on the occasion when she got her finger hurt; that she saw the scratched place on her finger the morning when she stuck the pin in her finger and saw evidence of the scratch; but at no time prior to the pin scratching did she ever observe any swollen condition of her forearm nor was her finger or wrist stiff before; that she was about two feet away from her at the time of her injury and saw her every day.

On cross-examination this witness testified that she did not remember whether plaintiff ever complained about her fingers getting sore from pin scratches before, but that other employees had; that she had stuck her fingers with pins frequently.

Witness, Bertha Campbell, testified that she was employed at the shirt factory and worked on the table right behind plaintiff and that plaintiff at the time she scratched her finger came to her table and exhibited the same to her; that she could see a pin scratch and that prior to that time her hand never been stiff or her forearm swollen but that she had been able to do her work.

Dan Wheeler, witness on behalf of plaintiff, testified that he lived just across the street from where Miss Kenser was boarding and remembered the occasion of her getting her hand hurt in the fall of 1929; that he saw her hand and that it was swollen and had a black spot on it and that he had seen her hand frequently before she got hurt and she had not theretofore had a swollen hand.

Dr. U. A. V. Presnell testified on behalf of the plaintiff that he was a physician practicing in Kennett for twenty years and that he was a graduate of Barnes University; that he treated plaintiff on October 17, 1929, for an infected finger on her right hand; that there was a little skinned place there and that it was dark around there and the finger was swollen and painful for half an inch or more around it; that he dressed the finger every day and that she then developed arthritic pains in her shoulder, which was caused from the infection; that he thought at the time that it was due to the dye she was handling and that the dye she was handling had infected her hand; that he lanced her finger.

On cross-examination this witness testified that her condition was more liable to be from the infection than from her tonsils and on re-cross-examination testified that in his opinion the arthritic condition of the shoulder was from her finger.

Dr. Thomas C. McClure, on behalf of the plaintiff, stated that he had been practicing in Sikeston since 1919, was a graduate of Barnes University in the class of 1917 and prior to locating in Sikeston had had a year's experience in the City Hospital in St. Louis and a year in the army during the World War; that during the latter part of October he was called to plaintiff's home and found her with an infection of the second finger of the right hand and that plaintiff was complaining of pain in her knee; that her finger was considerably swollen and was considerably discolored and that the swelling went considerably above her wrist; that it was an acute inflammation and red and was very painful to the touch; that in his opinion she was suffering from an infection on the finger, with an arthritic condition in the wrist joint. Being questioned as to what the cause of the arthritis, he stated:

"A. In my opinion, it was caused from the infection of the finger. I made a complete examination and I could not find anything else.

"Q. Did you give the customary tests? A. Yes, sir.

"Q. Did you make a thorough physical examination of her? A. Yes, sir.

"Q. Did you examine her tonsils? A. I examined her teeth and tonsils.

"Q. From your physical examination of her, what, in your opinion was the cause of the arthritic condition? A. Infection in the finger.

"Q. I will ask you, if in your opinion, the condition of her tonsils had anything to do with this? A. I do not think so.

"Q. Do you think sinus trouble caused this? A. No, sir, because that was not acute and she did not complain of any sinus trouble to me.

Witness again says she was suffering from arthritis.

On cross-examination witness testified that he did not attribute her condition to sinus trouble; that he made an examination of her sinuses and did not find anything wrong with her; that he examined her for rheumatism and did not find any rheumatic condition present; that acute arthritis involves the joint with infection, while rheumatism may involve the joint, but seldom the joint and mostly the muscles around the joint which would give the patient more or less use of the joint. That an infection did not have to be limited to the finger but might go to any part of the body that the condition of the finger the first time he examined it was acutely inflamed and the area about the size of a ten-cent piece was considerably discolored; that plaintiff had told him she had a cold and sore throat; that he did not see any signs of sinus trouble at the time she had the cold; that on examination by Referee Friedewald, Dr. McClure testified that he treated her thirty, forty or fifty times; and further testified that the infection was practically to the bone and that he cut the dead tissue out of the center of it; that he did not cut any of the tendons and that in arthritis there would be no recovery, although there would be in rheumatism; that he was of the opinion the ankylosis is permanent. On recross-examination the doctor testified that he had never thought of the same as being caused by rheumatism and that irrespective of the treatment she received in St. Louis, it would not change his opinion that her disability was not caused by acute rheumatism, but that it was caused by arthritis.

This testimony is overwhelming that the plaintiff was at work for the defendant employer and that she hurt her finger on October 17, 1929, and that she suffered greatly from some cause, and was unable to continue her work.

The defense claimed that her suffering and inability to work was due to disease which was in no way connected with her employment. Two witnesses were offered by the defense on that point, one of these was D. G. V. Stryker of St. Louis, who saw her only once and examined her at St. John's Hospital on December 4, 1929. In his testimony we find this language:

"In other words, detmatitis did not exist, but there was apparently an inflammatory process going on deep down which was reflected in redness of the skin. I was under the impression at the time that there was a low-grade infection, and my thought as expressed at that time, although not officially, because there was not sufficient time to study and investigate the case thoroughly, was that she was suffering from something which was not a skin disease, but probably arthritis."

The doctor further testified that the respondent could acquire dye poisoning by ironing damp, recently dyed, shirts and further testified that it might have cleared up between October 17, 1929 (the day of the pricking) and December 4, 1929 (the date of his examination of respondent). That in his opinion "her condition was an arthritic one."

On cross-examination, the doctor testified that at the time of his examination he eliminated everything and supposed it was arthritis; that he made only one examination of respondent.

The doctor testified on cross-examination as follows:

"Q. In your opinion, however, it is possible for an employee working in a shirt factory, whose duty may be to iron a shirt wet from dye and pinning it, to become infected from a pin prick in conjunction with ironing and handling of the shirt? A. Well, now, do you mean by infected—do you mean infected with a pus organism, or do you mean dye poisoning?

"Q. Either one? It is possible.

"Q. In other words, both might happen? A. Both might happen, yes, sir."

The testimony of this witness does not tend in the least to contradict the theory of the plaintiff and her physicians, but we think strengthens the plaintiff's testimony.

This leaves, as we view it, only one witness for the defense whose testimony is claimed to contradict the plaintiff in any way, and that is the testimony of Dr. Leo A. Wills, who testified that he had practiced his profession for twenty years in St. Louis, Missouri, and was a graduate of the St. Louis University. He then read from a memorandum giving what he called the history of the case; that he diagnosed the case as an acute articular rheumatism and that it had no connection with an injury from dye poisoning, but said, "My impression it was just an acute articular rheumatism," and

that when he examined her hand it did not indicate any infection. He further stated that in his opinion a pin prick on October 17th could not have aggravated what he considered preexisting diseased condition so as to have caused disability.

On cross-examination the doctor testified that he specialized in surgery; that the most accepted theories was that arthritis was caused by infection, and he would not say whether her condition was aggravated by a pin prick or not. Stated that the condition of the girl's hand did not indicate an infected hand caused from a pin prick, and further stated as follows: "It wasn't like infected hands we get, and I see hundreds of them every year, where an individual will stick something in their finger and get an infection in their hand that has to be opened; has pus and all that. This picture was entirely different from that."

"Q. You didn't examine the patient, and didn't see her, until November 27th some forty days after the claimed accident? A. That is right.

"Q. And could there have been a local infection which has been treated and cleared up in that period of time? A. Now, it is possible for you to have most anything prior to the time I saw her. I am basing my findings on the physical conditions as I found them when I saw her.

"Q. And there could have been a local infection that had been cleared up? A. She could have had a local infection, yes."

Witness further stated that baking was customarily recognized treatment for arthritis and that heat was a good thing for most anything.

Witness further testified that he very frequently testified for Mr. Conney (attorney for employer and insured) and that he looked after the insurance company's business at the hospital for the American Mutual Insurance Company.

Witness, Beulah Hagey, testified on behalf of the employer and insurance company that she was floorlady and although the employee had suffered somewhat from sinus trouble, she had had no other illness, except might have had an attack of the flu along about the holidays of 1928, and that she had learned of the injury with the pin on the day that it happened.

On cross-examination she testified that the employee told her about the injury to her hand when she got home and showed her her finger and that she had never noticed any swelling of her hand and forearm prior to this occasion.

We fail to see any definite statement in the testimony of Dr. Wills, that contradicts in any way the testimony of the other physicians. He does say that at the time he examined her, forty days after the accident, that the condition of the girl's hand did not indicate an

infected hand caused from a pin prick, but he nowhere says or intimates that she did not receive such a prick, but he does say that she could have had a local infection and that it could have cleared up by that time. So we think the trial court was correct in that part of his judgment in holding that there was not sufficient competent evidence in the record to warrant the Commission in finding that the employee's condition is not the result of accident arising out of and in the course of her employment. We think the testimony is abundant that the plaintiff was injured, and that said injury grew out of and in the course of her employment, and that there was no evidence of probative force that it was due to causes independent of said employment.

It follows that the judgment of the circuit court in holding that there was insufficient competent testimony in the record to warrant the Workmen's Compensation commission in making the award it did in favor of the employer and insurer should be affirmed, and it is so ordered.

It is further ordered that this cause be remanded to Workmen's Compensation Commission of Missouri for further proceedings not inconsistent with the views expressed in this opinion. *Cox, P. J.,* and *Bailey, J.,* concur.