STATE OF MISSOURI at the Relation of ELY & WALKER DRY GOODS COMPANY, a Corporation, and AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, a Corporation, Relators, v. ARGUS COX, WALTER E. BAILEY and ROBERT J. SMITH, Judges of the Springfield Court of Appeals.—73 S. W. (2d) 743.

Division Two, June 19, 1934.

*Wm. R. Schneider* and *J. J. Cooney* for relators.

*Harry C. Blanton* for respondents.

FITZSIMMONS, C.—This case comes to the writer upon reassignment. It is a certiorari proceeding to determine whether the opinion of the Springfield Court of Appeals in the case of Lillian Kenser, Respondent, v. Ely & Walker Dry Goods Company and American Mutual Liability Insurance Company, Appellants, 48 S. W. (2d) 167, is contrary to controlling decisions of the Supreme Court. We quote and paraphrase, by turns, from the opinion of the Court of Appeals as follows:

"This is an appeal from the Circuit Court of Dunklin County reversing the order, decision, findings, and award of the Missouri Workmen's Compensation Commission and remanding said cause to the commission.

"The plaintiff claimed that she was hurt on October 17, 1929, while employed by Ely & Walker Dry Goods Company, at its factory located at Kennett, Missouri. There is no question as to her employment at the time of the alleged injury, and no question as to her filing of a claim and the form thereof, nor is there any question as to the American Mutual Liability Insurance Company being the insurer.

"A claim was filed in time, a hearing was had before the commission, and the decision of the commission was as follows:

" 'The undersigned (the full commission) hereby find in favor of the above employer and insurer and against the above employee and award no compensation for the above alleged accident. For the reason that employee's condition is not the result of accident arising out of the course of her employment, but is due to cause independent of said employment.'

"The plaintiff took an appeal to the circuit court, and the record and evidence heard before the commission was presented to the court and on July 24, 1930, the circuit court rendered" a judgment finding that there was not sufficient competent evidence in the record to warrant the Workmen's Compensation Commission in making an award in favor of the employer and insurer, and also finding that "the employee's condition is the result of an accident arising out of and in the course of her employment and that the award of the Compensation Commission is; therefore, erroneous." The circuit court, accordingly, by its judgment, remanded the cause to the Workmen's Compensation Commission with directions to ascertain and award to the employee the compensation due her by law. From this judgment the employer and insurer appealed to the Springfield Court of Appeals, which, by its opinion which we are to examine, affirmed the judgment below. The employer and insurer thereupon made application to this court for a writ of certiorari. The writ was issued and

served and respondent judges made full and proper return. Material parts of the claim of the employee Lillian Kenser as set out in the opinion, are as follows:

"14. Exact nature of any permanent injury: Right hand and wrist probably permanently disabled.

"15. How accident happened, cause, and work employee was doing for employer at the time: It was the duty of the employee to sprinkle or spray shirts, which had been dyed, and then iron the same, and after ironing, to pin the shirts. While engaged in pinning one of the shirts, employee accidentally stuck a pin in the middle finger on the right hand, which became infected and poisoned from the dye used on the shirts. Shortly thereafter and on the same day, employee observed that the point where she was pricked by the pin, first in the finger and then the hand, became painful, inflamed and swollen and gradually spread to almost her entire body."

The employer denied that the employee received an accidental injury arising out of and in the course of her employment resulting in disability and averred that the employee's condition was the result of disease.

Lillian Kenser, the employee, testified that her duties in the employer's shirt factory at Kennett, Missouri, were to sprinkle freshly dyed shirts, after which she would iron and pin them up. About ten A. M. on October 17, 1929, while she was thus employed, she pricked the middle finger of the right hand with a pin. It became red and swollen and in the afternoon of that day she put iodine on the finger. Thereafter she went to Dr. U. A. V. Presnell, of Kennett, for treatment. He gave her salve which she applied every thirty minutes and which was badly discolored when removed from the affected area. She received treatment from Dr. Presnell for a week and then went to her home near Sikeston and became the patient of Dr. Thomas C. McClure, of that city. The latter lanced her hand three times. Thereafter at the request of the insurer, she went to a hospital in St. Louis, remaining there five days and receiving treatment similar to that which Dr. McClure had given her. She also testified that one of her knees and ankle and her right arm to the elbow became swollen, blue and red looking. The pain was most severe in her wrist. At no time prior to the pin pricking had she been bothered in her fingers and wrist. She had had a headache and had lost a day or two from time to time on account of sinus trouble but had not taken off a week or two during the year of her employment prior to the injury.

On cross-examination she testified that once in a while she would take a half day off on account of the sinus trouble but that she had not lost any time during July or August for this cause. She had either rheumatism or neuralgia in 1916 but had not suffered much from sore throat.

Mrs. Violet Hagey, who was the employee's superior in the shirt factory and with whom the employee boarded, testified that the employee complained of the pin scratch; that Mrs. Hagey helped her to dress the finger and that the finger was swollen, black and inflamed at the point of injury. Mrs. Hagey also testified that the employee had trouble with her head and had remained away from work from time to time for half a day, but the witness did not remember that the employee had been ill much since Christmas, 1928. Recalled as a witness for the employer, Mrs. Hagey testified that the employee had had an attack of flu about Christmas of 1928. Other witnesses for the employee testified that they saw the scratched finger and that they did not at any time prior to this accident observe any swollen condition of the employee's forearm, or any stiffness of her finger or wrist.

Dr. Presnell for plaintiff testified, as summarized in the opinion: "That he treated plaintiff on October 17, 1929, for an infected finger on her right hand; that there was a little skinned place there and that it was dark around there and the finger was swollen and painful for half an inch or more around it; that he dressed the finger every day and that she then developed arthritic pains in her shoulder, which was caused from the infection; that he thought at the time that it was due to the dye she was handling and that the dye had infected her hand; that he lanced her finger.

"On cross-examination this witness testified that her condition was more liable to be from the infection than from her tonsils and on re-cross-examination testified that in his opinion the arthritic condition of the shoulder was from her finger."

Dr. Thomas E. McClure on behalf of plaintiff testified that he visited her at her home near Sikeston in the latter part of October, 1929; that he found her suffering from an infection of the second finger of the right hand and that she complained of a pain in her knee; that her finger was considerably swollen and discolored and that there was a swelling above the wrist; "that in his opinion she was suffering from an infection on the finger, with an arthritic condition in the wrist joint." Being questioned as to what was the cause of the arthritis, he stated:

"'A. In my opinion, it was caused from the infection of the finger. I made a complete examination and I could not find anything else. . . .

"'Q. From your physical examination of her what, in your opinion, was the cause of the arthritic condition? A. Infection in the finger.

"'Q. I will ask you, if, in your opinion, the condition of her tonsils had anything to do with this? A. I do not think so.

"'Q. Do you think sinus trouble caused this? A. No, sir; be-

cause that was not acute and she did not complain of any sinus trouble to me.' "

Dr. McClure further testified that he did not attribute her condition to sinus trouble; that he did not find anything wrong with her sinuses; and that he did not find any rheumatic conditions:

"On recross-examination the doctor testified that he had never thought of the same as being caused by rheumatic condition and that irrespective of the treatment she received in St. Louis, it would not change his opinion that her disability was not caused by acute rheumatism, but that it was caused by arthritis."

Concerning the testimony for the defense the opinion of the Court of Appeals states:

"The defense claimed that her suffering and inability to work was due to disease which was in no way connected with her employment. Two witnesses were offered by the defense on that point. One of these was Dr. G. V. Stryker of St. Louis, who saw her only once and examined her at St. John's Hospital on December 4, 1929. In his testimony we find this language:

" 'In other words, dermatitis did not exist, but there was apparently an inflammatory process going on deep down which was reflected in redness of the skin. I was under the impression at the time that there was a low-grade infection, and my thought as expressed at that time, although not officially, because there was not sufficient time to study and investigate the case thoroughly, was that she was suffering from something which was not a skin disease, but probably arthritis.'

"The doctor further testified that the respondent could acquire dye poisoning by ironing damp, recently dyed shirts and further testified that it might have cleared up between October 17, 1929 (the day of the pricking), and December 4, 1929 (the date of his examination of respondent). That in his opinion 'her condition was an arthritic one.'

"On cross-examination, the doctor testified that at the time of his examination he eliminated everything and supposed it was arthritis; that he made only one examination of respondent.

"The doctor testified on cross-examination as follows:

" 'Q. In your opinion, however, is it possible for an employee working in a shirt factory, whose duty may be to iron a shirt wet from dye and pinning it, to become infected from a pin prick in conjunction with ironing and handling of the shirt? A. Well, now, do you mean by infected—do you mean infected with a pus organism, or do you mean dye poisoning?

" 'Q. Either one. A. It is possible.

" 'Q. In other words, both might happen? A. Both might happen, yes, sir.'

"The testimony of this witness does not tend in the least to contradict the theory of the plaintiff and her physicians, but we think strengthens the plaintiff's testimony.

"This leaves, as we view it, only one witness for the defense whose testimony is claimed to contradict the plaintiff in any way, and that is the testimony of Dr. Leo A. Wills. . . . He then read from a memorandum giving what he called the history of the case; that he diagnosed the case as an acute articular rheumatism and that it had no connection with an injury from dye poisoning, but said, 'My impression is that it was just an acute articular rheumatism,' and that when he examined her hand it did not indicate any infection. He further stated that in his opinion a pin prick on October 17th could not have aggravated what he considered preexisting diseased condition so as to have caused disability.

"On cross-examination the doctor testified that he specialized in surgery; that the most accepted theory was that arthritis was caused by an infection, and he would not say whether her condition was aggravated by a pin prick or not. He stated that the condition of the girl's hand did not indicate an infected hand caused from a pin prick, and further stated as follows:

" 'It wasn't like infected hands we get, and I see hundreds of them every year, where an individual will stick something in their finger and get an infection in their hand that has to be opened; has pus and all that. This picture was entirely different from that.

" 'Q. You didn't examine the patient, and didn't see her, until November 27th, some forty days after the claimed accident? A. That is right.

" 'Q. And could there have been a local infection which had been treated and cleared up in that period of time? A. Now, it is possible for her to have had most anything prior to the time I saw her. I am basing my findings on the physical conditions as I found them when I saw her.

" 'Q. And there could have been a local infection that had been cleared up? A. She could have had a local infection, yes.' "

Respondents, in their opinion made the following comment on the testimony of Dr. Wills:

"We fail to see any definite statement in the testimony of Dr. Wills that contradicts in any way the testimony of the other physicians. He does say that at the time he examined her, forty days after the accident, the condition of the girl's hand did not indicate an infected hand caused from a pin prick, but he nowhere says or intimates that she did not receive such prick; but he does say that she could have had a local infection and that it could have cleared up by that time. So we think the trial court was correct in that part of his judgment in holding that there was not sufficient competent evidence in the

record to warrant the commission in finding that the employee's condition is not the result of accident arising out of and in the course of her employment.''

The Court of Appeals prefaced its summary of the evidence with a statement of relator's assignments of error and with a digest of Section 3342, Revised Statutes 1929, which defines the duties and scope of authority of the circuit court upon appeal from the Workmen's Compensation Commission. The opinion there stated:

■ ''It is seen from the foregoing statute that one of the powers of the circuit court is to remand the cause for rehearing if the court finds that there was not sufficient competent evidence in the record to warrant the making of the award. A reference to the court's judgment, heretofore set out in full, will show that is exactly what the court did find. The court used almost the exact language of the statute, viz.: 'The court finds that there is not sufficient competent evidence in the record to warrant the Workmen's Compensation Commission of Missouri in making the award it did. . . .' Certainly by statutory provision the trial court had a right to go that far. Our appellate courts have so held in numerous recent cases. [De Moss v. Brick Co., 225 Mo. App. 473, 37 S. W. (2d) 961; Beecham v. Greenlease Motor Co. et al., 225 Mo. App. 619, 38 S. W. (2d) 535, 537; Woods v. American Coal & Ice Co. (Mo. App.), 25 S. W. (2d) 144.]

''The court had a perfect right to pass on the sufficiency of the evidence, and it is up to us now to determine as a matter of law whether or not there was sufficient competent evidence adduced, in the hearing before the trial court, to justify the finding made by the commission in denying the plaintiff's claim, and whether or not the court erred in holding the evidence insufficient. [Smith v. Levis-Zukoski Merc. Co., 223 Mo. App. 743, 14 S. W. (2d) 470, 472.] This requires a review of the testimony.''

The opinion then gave a summary of the evidence which we have epitomized. We have seen that the opinion closed its review with the conclusion that ''there was no evidence of probative force that it (the injury) was due to causes independent of said employment.''

Relators urge that the opinion of the Springfield Court of Appeals is in conflict with cited opinions of the Supreme Court and of other Courts of Appeals. We will disregard the cited opinions of the Courts of Appeals because in certiorari proceedings only opinions of the Supreme Court are determinative of the issue raised. The Supreme Court decisions with which, relators allege, the opinion of the Court of Appeals in the instant case is in conflict are: State ex rel. Brewen-Clark Syrup Co. v. Missouri Workmen's Compensation Commission, 320 Mo. 893, 8 S. W. (2d) 897, and Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601. The point of conflict stated is that

these cases lay down the rule of law that the findings of fact made by the Missouri Workmen's Compensation Commission, being supported by substantial competent evidence, are in the nature of a special verdict and therefore binding and conclusive on the courts on appeal. To this major premise relators add the minor premise that it appears from respondent's opinion that the findings of fact made by the commission are supported by substantial competent evidence. Therefore, they conclude, the opinion under review is in conflict with the cited opinions of this court, which opinions are declared to be controlling. In Leilich v. Chevrolet Motor Co., supra, this court ruled (328 Mo. 1. c. 121, 40 S. W. (2d) 1. c. 604):

"From the foregoing it is clear that on this review of the commission's findings of fact we are precluded from weighing the evidence; consequently questions of burden of proof and preponderance of the evidence require no consideration at our hands. The findings are in the nature of a special verdict, and as such are binding and conclusive, if supported by any substantial competent evidence."

It clearly appears that respondents, in their opinion under review, did not state a rule of decision contrary to the rule stated by the Supreme Court in the Leilich case, supra. But relators argue that it is contrary to the letter and spirit of the Compensation Act for courts to weigh the evidence under the guise of finding that there is "insufficient competent evidence in the record to warrant the making of the award." We may grant this to be true for the sake of argument. Yet it does not follow that in such a case we may exercise the extraordinary powers of certiorari which we should put forth only when a Court of Appeals exceeds its jurisdiction by stating a rule of law contrary to a controlling decision of this court. This court, in the case of State ex rel. Koenen v. Daues (Mo.), 288 S. W. 14, in clear and terse terms, marked the distinction between the jurisdiction of a Court of Appeals to ascertain facts and its lack of jurisdiction to state a conflicting rule of law. As we believe that the statement of RAGLAND, P. J., in that case disposes of this proceeding, we quote his words (State ex rel. Koenen v. Daues, 288 S. W. 1. c. 15):

"It seems to be difficult to convince some of our brethren of the bar that the Courts of Appeals of this State are courts of last resort; that within their several jurisdictions they are just as supreme as we are in ours. The ascertainment of facts as a prerequisite to the application of the law is a necessary incident of the jurisdiction conferred upon them. The ascertainment of the facts of a given case being wholly within the competence of the Court of Appeals, upon a review of its decision in a certiorari proceeding, we are bound by its conclusions in that respect; our power under the Constitution is limited to determining whether it has applied to such facts the same rule of decision which we have applied in our previous rulings to

the same or a similar state of facts. Thereby the constitutional purpose of securing and preserving *uniformity in the general law* is fully subserved.'' It follows that our writ should be quashed. It is so ordered. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All the judges concur.