SARAH LANGLEY FOR HERSELF AND ON BEHALF OF JOLINE LANGLEY, MINOR, APPELLANTS, v. IMPERIAL COAL COMPANY, RESPONDENT.— 138 S. W. (2d) 696.

Kansas City Court of Appeals. April 1, 1940.

1088

*Edward L. Scheufler* and *Lawrence J. Ottley* for appellants.

*William Aull, Jr., Ike Skelton* and *Elmer B. Hodges* for respondent.

*Gage, Hillix, Hodges & Cowherd,* of counsel.

CAMPBELL, C.—Walter Langley, hereinafter called deceased, suffered injuries on May 22, 1937, while at work in a coal mine owned by the respondent, which injuries caused his death two days later.

Sarah Langley, widow of the deceased, and their minor child brought this proceeding to obtain award of compensation for said death.

The claim was heard by one of the commissioners who awarded claimants' compensation in the amount of $2739. On review by the full commission the award was affirmed by a majority of the commission, Hon. Edgar C. Nelson dissenting. The respondent, the alleged employer, appealed. The court on appeal found there was not sufficient competent evidence in the record to warrant the making of the award and adjuged claimants were not entitled to compensation. The claimants have appealed.

It is not necessary to cite authority in support of the pronouncement that if the evidence were sufficient to warrant the making of the award, then it must be affirmed.

The respondent contends that it was not operating the mine in which deceased was killed; that deceased and his associates, under the name Domestic Coal Company, hereinafter called Domestic, were operating the mine at the time of the fatal accident.

The facts are: The respondent owned and operated the mine in question prior to February, 1925. In February, 1925, respondent notified the men who had been employed in the mine that it would not continue operations. Thereupon, negotiations between representatives of respondent and its former employees concerning the latter leasing the mine and mine equipment of the former resulted in the said employees appointing the deceased and William Schulz as a committee to represent them in making a contract of rental. These representatives and respondent's manager, K. P. Kramer, went to the office of an attorney in Lexington, where a lease was written. The lease is dated February 24, 1935; the respondent is named as the first party and the Domestic, "composed of the persons whose names are hereto subscribed," as second party. The lease provided first party leased to second party the mine, mine shaft and equipment; that second party would provide the expense of all materials and labor necessary to keep and maintain the leased property in good repair; would operate the mine "to its full capacity as near as may be, in no event to permit the tonnage therefrom to be for any month less than 1500 tons." The stipulated royalty was fifty cents a ton for all coal mined and hoisted from the mine. The lease was signed by several persons, among whom were Schulz and the deceased. The lease is

plain and clear in its terms and there is nothing in its provisions suggesting it was made for a purpose other than as expressed therein. The Domestic selected from its members a mine foreman, weigh boss and a pit committee. The mine foreman had charge of the mine and directed the manner in which the men worked. The weigh boss weighed the coal at the top of the mine, kept a record thereof, was timekeeper and paymaster. The pit committee settled disputes between the men and their foreman. The men of the Domestic also employed and paid their bookkeeper, Leverett Roberts. He performed the duties ordinarily performed by such an employee. The Domestic at the beginning had neither cash nor credit. Kramer, acting for the respondent, bought and paid for a new cable; bought and paid for other mine supplies, and at various times purchased flickers. The Domestic, however, in every instance paid Kramer the sum thus loaned or advanced. Twice each month the bookkeeper, Roberts, prepared statements in triplicate showing the items of income, the items of expense and the amount to be paid each member of the Domestic. He retained one copy of each statement, gave one to Kramer and one to the weigh boss of the Domestic. The gross receipts, after deducting the expenses, were distributed by the weigh boss of the Domestic to the men who worked in the mine according to their respective rights therein. The members of the Domestic were not experienced in selling coal to be shipped from the mine in carload lots. They requested Kramer to sell such coal. Thereafter Kramer sold such coal in the name of the respondent, received checks therefor payable to the respondent. These checks were endorsed by Kramer to the Domestic and by the latter deposited in a bank. Workers, other than those who originally signed the lease, were permitted thereafter to work in the mine. No worker was permitted to work in the mine until he signed a copy of the lease kept by the weigh boss at the mine. The term of the lease was extended several times. The last term, evidenced by a writing, expired March 14, 1930. The operation of the mine was continued thereafter as though the lease was in effect.

In March, 1930, the deceased discontinued working in the mine. On that occasion Kramer, in the name of his company, wrote a letter addressed "To whom it may concern," saying that the deceased, "having been in our employ for a number of years," we can recommend him for any position he seeks. The deceased had been in the employ of the respondent for several years prior to 1925. Kramer, claimant's witness, said the letter referred to that employment, and that there was no evidence to the contrary. After an absence of a few months deceased returned to the mine and worked therein until his death. He signed the lease twice, evidently his second signature was affixed when he returned to work.

Claimants, in support of their contention that deceased was an employee of respondent, cite numerous cases, but seem to rely mainly

on the following: Donahue v. Adams Transfer & Storage Co., 88 S. W. (2d) 432; Becker v. Aschen, 131 S. W. (2d) 533; Woodruff v. Superior Mineral Co., 70 S. W. (2d) 1104; Maltz v. Jackoway-Katz Cap Company, 82 S. W. (2d) 909.

In the Woodruff case the claimant was an independent contractor and within, so the court held, the provisions of the compensation act. In the present case there is no claim the deceased was an independent contractor.

In the Maltz case the alleged employer had "right of control" of the employee.

In the Donahue case the evidence discloses the alleged employer "reserved the right to exercise and did exercise control over" the employee.

The Becker case was a common-law action for damages. The plaintiff's injuries were by the unsafe condition of a filling station operated by the defendant, Aschen, under a lease with his codefendant company, in which it was recited that Aschen was the "authorized agent for the company." There was evidence the injury was due to the unsafe condition of "an instrumentality maintained and used by the defendants for the benefit of both in connection with said filling station." Of course the court held the evidence was sufficient to show Aschen was the agent of his codefendant.

Was the respondent an employer within the meaning of the compensation law? Section 3304, Revised Statutes 1929, provides that every person "using the service of another for pay" is an employer under the act. The quoted phrase means right to control the means and manner of that service as distinguished from result of such service, the word "service" meaning the performance of labor for the benefit of another. [Rutherford v. Tobin Quarries, 82 S. W. (2d) 918, 336 Mo. 1171; Skidmore v. Haggard, 110 S. W. (2d) 729.]

The evidence shows the respondent did not pay deceased for any service; neither did respondent direct nor attempt to control deceased in doing the work in which he was engaged. Respondent, therefore, as a matter of law, was not an employer of the deceased.

The claimants further contend the lease was "only a fiction in practical effect. . . ." The lease created the relationship of lessor and lessee unless it was entered into for the "fraudulent purpose of avoiding liability" under the act. [Section 3308, R. S. 1929.] Fraud is never to be presumed. Proof of fraud must be positive and definite and if facts proven consist as well with honesty as with fraud the transaction will be held honest. [Moberly v. Watson, 340 Mo. 820, 102 S. W. (2) 886.]

The several acts of Kramer, the fact he advanced the purchase price of mine equipment thus enabling the Domestic to comply with the provisions of the lease, are not sufficient to show fraud. It should not be said a lessor cannot aid or assist his lessee to the end the latter

may perform his contract without being subjected to a charge of fraud.

It must be borne in mind deceased negotiated and executed the contract. The charge the lease was fraudulent is in effect a charge the deceased participated in a wrong. There was no proof to support that charge. The evidence of both parties shows the lease was an honest instrument; and that it was entered into by parties capable of contracting. Such an instrument must be enforced according to its terms.

The claimants argue the respondent did not post notices of the existence of the lease as required by the provisions of sections 13593-13595, Revised Statutes Missouri, 1929. These sections are not a part of the compensation law, and as the compensation act is a complete scheme in itself, said sections do not apply in the present proceedings.

The learned trial judge, upon examination of the record, found the award was not supported by any competent evidence. With that conclusion we agree. The judgment is affirmed. *Sperry, C.*, concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.