MARGARET FRIEDE, RESPONDENT, v. GEORGE LYTLE, INCORPORATED, ALLEGED EMPLOYER, AND CONSOLIDATED UNDERWRITERS, INSURER, APPELLANTS.—127 S. W. (2d) 40.

St. Louis Court of Appeals. Opinion filed April 4, 1940.

*Fordyce, White, Mayne, Williams & Hartman* and *G. Carroll Stribling* for appellants.

*W. Paul Mobley* and *Beasley & Zulley* for respondent.

HOSTETTER, P. J.—This case was begun by Margaret Friede, claimant, before the Workmen's Compensation Commission. George Lytle, Inc., the alleged employer and the Consolidated Underwriters, its insurer, resisted her claim for compensation.

It is sufficient to note that there is no question about George Lytle, Inc., being subject to the Workmen's Compensation Law and that the injury which claimant sustained was a genuine injury and was compensable if she was an employee of George Lytle, Inc., at the time of sustaining the injury complained of. The referee, before whom the claim was heard, found that she was in the employee of George Lytle, Inc., at the time of the reception of the injury, and made an award in her favor in the sum of $230.80. On a review of the referee's finding by the members of the Workmen's Compensation Commission, the referee's award was reversed; that body finding that the claimant

was not, at the time of the reception of her injury, in the employ of George Lytle, Inc. From this award an appeal was taken by the claimant to the circuit court, and, on a hearing that court reversed the action of the Workmen's Compensation Commission and directed that the case be remanded to the commission. From this action of the circuit court the alleged employer and the insurer have perfected their appeal to this court.

The facts disclosed by the testimony are substantially as follows: The claimant, Mrs. Friede, who is a resident of East St. Louis, Illinois, and known to be a capable demonstrator of food products, received a postal card, dated October 1, 1935, from Mrs. Lottie Tidrow, reading as follows:

"At this time, Geo. Lytle, Inc., 900 Hodiamont, St. Louis, Mo., is placing a number of Demonstrations on food (nationally known).

"If you would care for an interview kindly phone CA 8730 for information not later than Wednesday afternoon Oct. 2nd.

"Respectfully,

"Lottie Tidrow, Supervisor."

Shortly thereafter, Mrs. Tidrow and Mrs. Friede had a conference in St. Louis and arranged for Mrs. Friede to make demonstrations of these food products for George Lytle, Inc. A list of demonstrators from which Mrs. Tidrow should select had been given to her by George Lytle, Inc., and Mrs. Friede, the claimant, was selected from this list by Mrs. Tidrow. Mrs. Friede then demonstrated at different places in Illinois for George Lytle, Inc., prior to the date of the accident in question.

On November 16, 1935, while making a demonstration at Schermer Brothers' store in Granite City, Illinois, Mrs. Friede was injured. She was then demonstrating Nucoa, an oleomargine product, and the Nucoa and equipment, or set-up, used in the demonstration to be made by Mrs. Friede, belonged to George Lytle, Inc., and had been taken by a salesman of George Lytle, Inc., from its business place in St. Louis, Missouri, to the place of demonstration, in this instance, to Schermer Brothers' store in Granite City, Illinois, where the demonstration, which had been arranged by the salesman, was to take place. This was the same procedure as had been observed in former demonstrations made by claimant.

Reports of former demonstrations made by claimant between October 4 and November 16, 1935, were made by her to Mrs. Tidrow, and she, in turn, made a report to George Lytle, Inc. Mrs. Friede was paid at the rate of $3 a day and expenses for each demonstration, by George Lytle, Inc., with checks signed by George Lytle, as president, and A. B. Hughes, as secretary-treasurer, of George Lytle, Inc.

George Lytle, Inc., was the sole distributor of Nucoa and the other food products for which Mrs. Friede had acted as demonstrator. The demonstrations were all ordered and arranged for by George Lytle,

Inc., and were made under the direction of officers, salesmen and agents of said corporation for the purpose of increasing the sales and profits of said corporation. George Lytle, Inc., selected the time and place of the demonstrations, including the one where Mrs. Friede was injured.

During the time of the business contact between the claimant and Mrs. Lottie Tidrow, the latter had her office in the business house of George Lytle, Inc., in St. Louis, Missouri, and used the stationery and telephone service of that concern during the time these demonstrations were being carried on, and, as in the postal card above quoted, held herself out as acting for and as being in the service of George Lytle, Inc.

Mrs. Lottie Tidrow was called as a witness on behalf of the claimant in the hearing before the referee, and testified that she had become acquainted with Mrs. Friede sometime prior to the 2nd day of October, 1935; that she had previously met her at a food show in East St. Louis.

Mrs. Tidrow was very evasive in her answers to questions propounded to her by claimant's counsel, and, in frequent instances made no answers at all. She testified emphatically that she was not at any time in the employ of George Lytle, Inc., but was in the employ of the firms in foreign cities in the east and in Chicago, who were engaged in manufacturing the foods which were the products used by George Lytle, Inc., in the various demonstrations sponsored and carried on by it.

Mrs. Tidrow's testimony could only mean that she was changing employers every time a food product made by a different manufacturer was used by George Lytle, Inc., in putting on its many demonstrations. In the so-called cracker demonstrations she herself was, therefore, in the employ of the Educator Biscuit Company of Chicago, the Best Food Company of New York and Chicago, and the Educator Wafer Company, whose officers are in the east and in Chicago.

To illustrate, the following appears in Mrs. Tidrow's direct examination, viz.:

"Q. Didn't you tell her (meaning Mrs. Friede) the 2nd day of October, 1935, that George Lytle, was putting on a demonstration and you wanted her to go to work? A. No, sir; I did not. . . .

"By the Referee: Q. What company were you working for? A. In this particular instance, I was supervisor for the Best Foods, Inc.; there was a special campaign on at this time for George Lytle, Inc.; he is a distributor. I was hiring and firing demonstrators and attending to everything in every way for our company; representing them, in other words, here in St. Louis.

"By Mr. Beasley: Q. Now, Mrs. Tidrow, why did you say George Lytle then in this Exhibit 1, if she was working for somebody else? You told her that George Lytle would place a number of demonstrators, didn't you? That's what you say here, isn't it? A. No answer. Q.

How can you explain that? A. I was employing them at that time for the Educator Wafer Company; I was working for George Lytle in this campaign. Q. You were working for George Lytle? A. No, sir. Q. Why did you tell people—did you tell everybody you hired they were working for somebody else and not George Lytle? A. Mrs. Friede knew they were having a campaign. Q. That's just your own conclusion; you don't know that any more than I know it. How is it that you wrote Mrs. Friede and told her George Lytle was placing a number of demonstrators on food? You had no object in misleading her, did you? A. I was representing that company at that time; she knew— Q. Representing George Lytle; they paid expenses? A. No, sir; the Educator Wafer Company. Q. That's their check, isn't it? Don't you know that is George Lytle's check? A. No answer."

In her cross examination she stated as follows: "I have never been employed by George Lytle, Corp. or George Lytle, Inc. On November 15th and 16th, 1935, I was employed by Best Foods, Inc., which is a Chicago and a New York concern."

On her redirect examination the following occurred, viz.:

"Q. You said to Mr. Simpson you kept all your things up at George Lytles, by 'things you kept there,' what do you mean? A. Our paraphernalia for working, for demonstrating, cook books, and my report blanks. Q. And these products you demonstrated, would you keep them there? A. No answer. Q. What's the matter, don't you understand the question? A. No answer. Q. The question is, the products you were going to demonstrate or have some of these people demonstrate, were they kept at George Lytle's? A. Samples were kept there, yes. Q. The day you were demonstrating at Schermer Brothers, you sent out—what was that—oleo? A. It was nucoa. Q. All right; did George Lytle send a man up there with a set-up, as you call it (you don't have to look at Mr. Simpson now to answer my question), did they send a man ahead of her, of this demonstrator, and he would set up the show and take a supply of this Nucoa, or whatever it was to be demonstrated? He would take that over from George Lytle's? A. That was Mr. Schermer's order. Q. Schermer Brothers didn't have anything to do with that; the demonstrator didn't carry the products herself? A. No, sir. Q. Would you always send a man from George Lytle's and he would put it up so when the demontrator came in to take charge of it the exhibit was all set up; wasn't that the way it was done? A. No answer. Q. George Lytle would send a man out and set up the show before the demonstrator got there, didn't he? Isn't that a fact? A. They always do that in demonstration. Q. When you say it is always done was it done that way in Mrs. Friede's case, when she went to work there? That was what was done there?

"BY MR. SIMPSON: If you know whether it was done.

"A. I was not at any of the demonstrations in East St. Louis.

"By Mr. Beasley: Q. Do you know how she got the Nucoa which was going to be demonstrated at Schermer Brothers on November 16th, 1935; have you the least idea how she got that? A. Why, the salesman delivered it to the store. Q. He got that supply from George Lytle, at 900 Hodiamont Avenue, didn't he? A. Yes. Q. And took it over there and set up the display in Schermer Brothers' Store, didn't he? A. No answer."

George E. Lytle, president of the corporation, when sworn as a witness, testified that Mrs. Tidrow had never been employed by George Lytle, Inc., but that she did have space in its offices, and admitted that it did pay the claimant regularly for her services in demonstrating and that the various manufacturers of the products would later repay it for such outlay; that the demonstrations which George Lytle, Inc., sponsored and carried on were sponsored and carried on because of the profits it would make on the sales of the product.

Albert Hughes, secretary-treasurer of George Lytle, Inc., testified in part as follows: "I am employed by George Lytle, Inc., as bookkeeper. I have charge of keeping the payroll records there. I did not bring my payrolls for the week of November 16, 1935, with me at the hearing. I cannot tell from memory whether or not Mrs. Friede's name appears on the payroll of George Lytle, Inc. Mrs. Friede never at any time worked for George Lytle, Inc., to my knowledge." This statement, and other similar statements, were mere opinion evidence carrying little, if any, weight.

The claimant, Mrs. Margaret Friede, testified that she never knew other than that she was in the employ of George Lytle, Inc.; that she knew who manufactured some of the products which she demonstrated, but that as she got her checks regularly from George Lytle, Inc., she always knew that she was an employee of that corporation. Claimant denied that Mrs. Tidrow ever told her that she (claimant) was in the employ of different manufacturers whose headquarters were in Chicago or in the east; that she knew that Mrs. Tidrow was working for George Lytle, Inc.

After duly considering the testimony as a whole, we are convinced that the award of the Workmen's Compensation Commission is not supported by sufficient, competent and substantial testimony to justify us in sustaining it. While we recognize the force and effect of the finding and award of the Workmen's Compensation Commission, yet it is our duty to determine whether such finding and award is based on sufficient and substantial, competent testimony.

It is worthy of note that the only person who heard the testimony *pro* and *con* and saw the witnesses while they were delivering their testimony, is the Honorable Ben L. White, the referee of the Missouri Workmen's Compensation Commission. He was, therefore, in a position which gives him a great vantage ground over the members of the commission who afterwards had the opportunity of reading the

testimony, but did not have the opportunity of seeing the witnesses and observing their demeanor while on the witness stand, and were, therefore, denied the opportunity of determining the weight to be given to such testimony.

It is the well-settled rule that the triers of fact who see and hear the witnesses while delivering their testimony, are much more capable of determining the weight to be given to that testimony than is any reviewing court, which has to read from the printed pages and base its conclusion upon the testimony therein set out, and it is worthy of note that Mr. White, the referee, found the issues in favor of claimant, Mrs. Margaret Friede.

The referee could see and observe Mrs. Lottie Tidrow and the other witnesses while their testimony was being elicited, could note the expression of their faces, their demeanor, their reluctance to answer questions in certain instances, their furtive glances at friendly counsel, and was thereby enabled to correctly and accurately appraise the value of the testimony of each witness, to separate the wheat from the chaff, the golden nuggets of truth from the base alloy of falsity and deception.

Their superior vantage ground was denied to the members of the Workmen's Compensation Commission, who later reversed the award of the Referee, and found that Mrs. Friede was never in the employ of George Lytle, Inc. This, to our minds, is a strange and farfetched conclusion. It cannot be doubted that Mrs. Friede did the work at these various demonstrations concededly put on and sponsored by George Lytle, Inc. She was, in effect, invited by the postal card, concededly written and mailed by Mrs. Lottie Tidrow, to enter the services of George Lytle, Inc. She had every reason to assume that she was in the employ of George Lytle, Inc., inasmuch as that concern regularly sent her checks covering her wages and expenses. It is unreasonable to assume that Mrs. Friede would accept as employers firms in far off cities, some of whom she probably had never heard of, rather than George Lytle, Inc., a reputable firm, just across the Mississippi River from her home in East St. Louis, Illinois. She, of course, knew nothing of the claim now advanced by George Lytle, Inc., that it was paying her wages and later getting a refund from the various foreign firms whose food products the George Lytle, Inc., concern were demonstrating. No information of this practice was shown to have been imparted to the claimant until she had sustained an injury while doing the work of George Lytle, Inc.

The award of the Workmen's Compensation Commission would be a dangerous precedent to set, one which might impair the benefits of the Workmen's Compensation law. Any concern might appear as an employer of laborers until an employee became injured, and then escape its obligations and duties under the law by showing that it was not a real employer but a fictitious one because it had been reimbursed by others the amount of wages it had paid the employee.

The principles announced by our Supreme Court in the case of Pruitt v. Harker, 328 Mo. 1200, 43 S. W. (2d) 769, practically settles the instant case.

In the Pruitt case, *supra*, a boy sixteen years old was working for his father, who was an independent contractor operating a saw mill on a timbered tract of several thousand acres. There was no contract of employment between the father and son, and no wages were paid to the son or expected. The defendant (owner of the timbered tract) was obligated to pay the father $8.50 per thousand for the timber he sawed, while the father was obligated to furnish his own help, which, in this instance was his son and three other helpers. The son was injured, and an allowance of compensation against defendant was upheld by the Supreme Court. The following language, contained in the opinion, is *apropos*:

"The act under which plaintiff claims compensation for his injuries is, as its name indicates, a *workmen's* compensation act rather than an *employee's* compensation act. That plaintiff was a workman engaged in work covered by this act, we think, is clear, whether the strict relationship of employer and employee existed or not." (Italics ours.)

In the instant case Mrs. Friede was actually employed by George Lytle, Inc., through its agent, Mrs. Tidrow. Mrs. Friede actually worked in the service of George Lytle, Inc., with the food products and appliances actually furnished by George Lytle, Inc., and on the premises selected by it, and her work resulted in admitted profits and benefits to George Lytle, Inc.

In Yancey v. Egyptian Tie and Timber Co. (Mo. App.), 95 S. W. (2d) 1230, l. c. 1231, this court, in an opinion by Judge McCULLEN, stated as follows:

"However, the award of the compensation commission is not binding on the circuit court on appeal unless there be substantial competent evidence in the record to support such award. It is the duty of the circuit court to examine the record in a compensation case, and even though there be some evidence which supports the award of the commission, if it be not legally sufficient or if it be of such character as to be lacking in sufficient probative force to sustain the award of the commission, it is the duty of the court to reverse such award and remand the cause to the commission for further proceedings. [Sec. 3342, R. S. Mo. 1929 (Mo. Stat. Ann., 3342, p. 8275); Kenser v. Ely & Walker Dry Goods Co., 226 Mo. App. 1016, 48 S. W. (2d) 167; Adams v. Lilbourn Grain Co., 226 Mo. App. 1030, 48 S. W. (2d) 147; Thurman v. Fleming-Young Coal Co. (Mo. App.), 49 S. W. (2d) 288.]"

In Adams v. Lilbourn Grain Co., 226 Mo. App. 1030, 48 S. W. (2d) 147, l. c. 150, the Springfield Court of Appeals in discussing the paucity of testimony in support of the finding and award of the Workmen's

Compensation Commission, quoted from Spiro v. St. Louis Transit Co., 102 Mo. App. 250, 76 S. W. 684, the following:

"We have decided to grant another trial of this cause, having reached that decision not only after much reflection on the evidence, but after a study of the precedents in this State in which a similar course was taken. They are more numerous than we supposed; thus demonstrating that, while appellate tribunals are reluctant to interfere with verdicts on the score of insufficient evidence, they are more reluctant to accept as conclusive one given at the first hearing, if it cannot be accounted for by rational theories."

In Stepaneck v. Mark Twain Hotel (Mo. App.), 104 S. W. (2d) 761, l. c. 765, this court made the following pronouncement on the same subject, viz.:

"It has also been held, however, that the award of the compensation commission is not binding on the court of appeals unless there be substantial competent evidence in the record to support such award. If the evidence in the record upon which the award of the commission was based is not legally sufficient, or if it be of a character lacking in sufficient probative force to sustain the award of the commission, the award cannot stand, and under section 3342, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., 3342, p. 8275), it is the duty of the court to reverse such award and remand the cause to the commission for further proceeding. [Teague v. Laclede-Christy Clay Products Co., 331 Mo. 147, 52 S. W. (2d) 880; Yancey v. Egyptian Tie & Timber Co. (Mo. App.), 95 S. W. (2d) 1230; Thurman v. Fleming-Young Coal Co. (Mo. App.), 49 S. W. (2d) 288.]"

In the case of Hodges v. Chevrolet Motor Co., 116 S. W. (2d) 170, this court upheld the circuit court in reversing an award of the Workmen's Compensation Commission, on the ground that the employer's evidence was not sufficient to support the award.

In Carlton v. Henwood, 115 S. W. (2d) 172, the Springfield Court of Appeals made a similar ruling upsetting the award of the commission on the ground that the evidence relied upon to support it was legally insufficient and lacking in probative force.

Section 3342, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., 3342, p. 8275) provides, inter alia, that on appeal the circuit court may modify, reverse, remand for rehearing or set aside the award of the commission if the facts found by the commission do not support the award, or if there is not sufficient competent evidence in the record to warrant the making of the award.

In Kenser v. Ely Walker Dry Goods Co., 226 Mo. App. 1016, 48 S. W. (2d) 167, the Springfield Court of Appeals in commenting on that statute stated as follows:

"It is seen from the foregoing statute that one of the powers of the circuit court is to remand the cause for rehearing if the court finds

that there was not sufficient competent evidence in the record to warrant the making of the award. . . .

"The court had a perfect right to pass on the sufficiency of the evidence, and it is up to us now to determine as a matter of law whether or not there was sufficient competent evidence adduced, in the hearing before the trial court, to justify the finding made by the commission in denying the plaintiff's claim, and whether or not the court erred in holding the evidence insufficient. [Smith v. Levis-Zukoski Merc. Co., 223 Mo. App. 743, 14 S. W. (2d) 470, 472.]

On the question of the employment of claimant, see Thurman v. Fleming-Young Coal Co. (Mo. App.), 49 S. W. (2d) 288; Biskup v. Hoffman, 220 Mo. App. 542, 287 S. W. 865.

In case of doubt as to the employee's right to compensation such doubt must be resolved in favor of the employee. [Hodges v. Chevrolet Co. (Mo. App.), 116 S. W. (2d) 170; Pruitt v. Harker, 328 Mo. 1200, 43 S. W. (2d) 769; Howes v. Stark Bros. Nurseries and Orchards Co., 223 Mo. App. 793, 22 S. W. (2d) 839; Betz v. Columbia Tel. Co., 224 Mo. App. 1004, 24 S. W. (2d) 224.]

In Ash v. Modern Sand and Gravel Co. (Mo. App.), 122 S. W. (2d) 45, it was held by this court that testimony taken in a case wherein the mother of a deceased employee was the sole claimant, could not be used against a child of the same deceased employee who later became a claimant.

We have examined the cases cited by attorneys for appellants and find that they are distinguishable from the cases cited and relied on herein.

The action of the circuit court in reversing the award of the Workmen's Compensation Commission and remanding the cause in the instant case is accordingly affirmed. *Becker* and *McCullen, JJ.*, concur.