**Ronald Kirk LAWSON, Plaintiff-Appellant,**

v.

**E. L. LAWSON, a sole trader d/b/a Farmers Feed and Supply Company, and Western Casualty and Surety Company, a corporation, Defendants-Respondents.**

**No. 8615.**

Springfield Court of Appeals.

Missouri.

May 2, 1967.

Frieze & Crandall, Carthage, for plaintiff-appellant.

Edward G. Farmer, Jr., Joplin, for defendants-respondents.

STONE, Presiding Judge.

In this proceeding under the Missouri Workmen's Compensation Law [V.A.M.S. Chapter 287], claimant Ronald Kirk Lawson filed a claim for benefits on account of personal injuries said to have resulted from an accident on August 13, 1963, when he slipped and fell to the ground as he "was going over the side" of a truck which he and one Grimmett were loading with feed from a boxcar on railway tracks near the retail feed outlet in Carthage, Missouri, owned and operated by claimant's father and alleged employer, E. L. Lawson, a sole trader doing business as Farmers Feed and Supply Company, whose liability under the Compensation Law was insured by Western Casualty and Surety Company. Claimant, then fifteen years ten months of age, was working during the summer vacation between school terms. From the outset of this proceeding, the basic issue has been as to whether or not he was an "employee" of his father within the contemplation and meaning of the Compensation Law. Section 287.020(1). Upon hearing, the referee found that claimant was an "employee" and made an award of compensation and medical benefits. On the insurer's application for review [Section 287.480], the Industrial Commission concluded that he was not an "employee" and accordingly entered a final award denying compensation. The final award having been affirmed upon claimant's appeal to the Circuit Court of Jasper County, he brings the problem to us.

We extract the pertinent facts from the testimony of claimant and his father, the only two witnesses. Claimant resided with his parents on a farm west of Carthage; and, after the close of the 1962–63 school year, he worked on that farm with his paternal grandfather for about one and one-half months. When his older brother who had been working at the feed outlet entered military service during July 1963, claimant began to work there, although not every day. He agreed with employer's-insurer's counsel that "it was sometimes just two or three days a week, or three or four days a week" but added that he worked "anytime [my father] needed me." "If we weren't doing anything," he "sometimes . . . left [the feed outlet] in the middle of the afternoon." Although readily acknowledging that "some weeks [claimant] didn't work every day at the store," the father insisted that "I didn't excuse him very much . . he did pretty well fill-in all the time; there wasn't too many days he missed."

The father "had no arrangement with [claimant] to pay him any wages," paid no "regular compensation" to him, did not enter his name on any payroll record, and did not report him as an employee for the withholding of income or social security taxes or for the computation of premiums by Western Casualty, the father's insurer. The father and claimant agreed that the only payments by the former to the latter were (in claimant's words) "just my regular allowance," the frequency and amount of those payments being indeterminable upon the record. However, the father stated that "he [claimant] did just about anything that we needed to do"—"he was active in mixing feeds and the delivery of feeds"; and, when asked "what kind of work" he did at the feed outlet, claimant said "everything" including the mixing and delivery of feed, loading products into customer's vehicles, and unloading boxcars of

grain. To the inquiry "who directed his [claimant's] work," the father replied, "I did." According to the father, claimant "did similar or like work" to that done by two male employees, each of whom was paid $80 per week; and, after claimant's accident, the father "replaced the boy [claimant]" with another male employee who was paid $70 per week.

■ The parties have briefed and discussed extensively the general rules applicable to appellate review in workmen's compensation cases, and it may be well to dispose of that subject first. Since many of the cases cited in the briefs were decided prior to adoption of the Missouri Constitution of 1945, we note that Article V, Section 22, thereof worked a change in the scope of review and the effect to be attributed to findings of fact by the Industrial Commission [Shrock v. Wolfe Auto Sales, Inc., Mo., 358 S.W.2d 812, 814(2)], and that the cited constitutional provisions imposed upon reviewing courts the duty to determine whether the award of the Commission is " 'supported by competent and substantial evidence upon the whole record.' " Wood v. Wagner Electric Corp., 355 Mo. 670, 674, 197 S.W.2d 647, 649. See V.A.M.S. § 287.-490, subd. 1(4). This does not mean that either the circuit court or this court should substitute its own judgment on the evidence for that of the Commission; but it does authorize a reviewing court to set aside the findings and award of the Commission if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award. Corp. v. Joplin Cement Co., Mo. (banc), 337 S.W.2d 252, 258(5); Conley v. Meyers, Mo., 304 S.W.2d 9, 10(2); Johnson v. Simpson Oil Co., Mo.App., 394 S.W.2d 91, 93(1).

■ Because this has been discussed in the briefs, we also observe that apparently the issue concerning instant claimant's status as an employee vel non presents a question of law [Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 1007, 82 S.W.2d 909, 913 (7); Saxton v. St. Louis Stair Co., Mo. App., 410 S.W.2d 369, 375(4)], although this " 'seems academic rather than substantial' " in view of the present scope of appellate review. Shrock, supra, 358 S.W.2d at 814. Furthermore where, as in the case at bar, there was no material conflict in, or dispute concerning, the facts bearing upon claimant's status as an employee vel non, the resolution of that issue became a question of law and the Commission's determination thereof is not binding on the reviewing court. Corp, supra, 337 S.W.2d at 258(7), and cases there cited.

■ Of course, the Industrial Commission, or for that matter any fact-finding administrative agency, passes upon the credibility of witnesses and may decide a claim solely upon a finding of lack of credibility of uncontradicted and unimpeached testimony. Scott v. Wheelock Bros., 357 Mo. 480, 484, 209 S.W.2d 149, 151(3); Smith v. Smith, 361 Mo. 894, 901, 237 S.W.2d 84, 89(5); Arnold v. Wigdor Furniture Co., Mo., 281 S.W.2d 789, 796. See Norman v. State Department of Public Health and Welfare, Mo.App., 283 S.W.2d 143, 146(4). But there is no indication that the Commission's finding as to instant claimant's status at the time of accident was based on disbelief of the testimony of either claimant or his father. Cf. Sanderson v. Producers Commission Ass'n., 360 Mo. 571, 578, 229 S.W.2d 563, 567. Rather, it appears that the Commission simply regarded such testimony as insufficient to justify or permit a finding that claimant was an "employee" within the meaning of the statutory definition of that term, to wit, "[t]he word 'employee' as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election . . .." V.A.M.S. § 287.020(1).

A distinguished writer in this field opines that "[t]he definition of the term 'employee' . . . has probably produced more reported cases than any definition of status in the modern history of law" [1A Larson, Workmen's Compensation Law, § 43.10, p. 623], and certainly Missouri courts have had their fair share of this category of cases. However, our task is simplified to some extent by virtue of the fact that opposing counsel and the Industrial Commission (although disagreeing as to whether the case supports instant claimant's position) alike recognize the significance and importance of the same Missouri case, namely, Pruitt v. Harker, 328 Mo. 1200, 43 S.W.2d 769, that being the first and principal case cited in both briefs on the issue as to claimant's status and the only case discussed in the six-page opinion (captioned "Additional Findings of Fact and Conclusions of Law") handed down by the Industrial Commission. Hence, we examine that case in some detail.

Defendant Harker, the owner of several thousand acres of land who desired to have the timber thereon cut and sawed into merchantable lumber, purchased and placed thereon five sawmills ready for use and then contracted with five individuals, each of whom was to operate one of the sawmills at his own expense as an independent contractor, hiring and paying his own help. One of those independent contractors was William Pruitt, who employed three men at $2 per day and, with the help of his three sons, one of whom was claimant Ronie Pruitt, then sixteen years of age, operated a sawmill. Claimant Ronie was "working for his father on account of that relation and not under any contract of employment, express or implied. His father was entitled to his services without compensation, and none was promised. [Ronie] was not working for wages, but was living with and being supported by his father . . . . He was, however, doing the work of an adult, for which [the father] was paying others $2 per day" and defendant knew, when she contracted with the father to operate the sawmill, that Ronie "would make a hand for his father at this work." 328 Mo. at 1209, 43 S.W.2d at 772.

When, after sustaining an injury at the sawmill, claimant Ronie sought to recover benefits under the Compensation Law from defendant Harker, her first contention was that, since she had only three persons in her direct employ or on her payroll, she was a minor employer and not subject to the Law. Sections 3302(b) and 3303, RSMo 1929; now V.A.M.S. §§ 287.050(2) and 287.090, subd. 1(4), as amended Laws 1965, p. 399. However, the court pointed to Section 3308 (a), RSMo 1929 [now V.A.M.S. § 287.040 (1)], providing that "[a]ny person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, *and their employees,* when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business." (All emphasis herein is ours.) And defendant Harker was held to have been, for the purposes of the Compensation Law, (1) *a major employer* [Sec. 3302(a), RSMo 1929; now V.A.M.S. § 287.050(1)] "by counting these operators of the sawmills *and their employees* as being employees of the defendant" [328 Mo. at 1206, 43 S.W.2d at 771] and (2) *the statutory employer* of claimant Ronie, *"although [he] was employed by William Pruitt* [his father], an independent contractor," since "defendant, as the one having the work done on her premises, [was] liable as employer *to the employees of the contractor,* though an independent one." 328 Mo. at 1206, 43 S.W. 2d at 771.

Defendant Harker further contended that claimant Ronie *"was not an employee even of William Pruitt* [*his father*], one of the independent contractors . . . and consequently was not directly or indirectly an employee of the defendant." 328 Mo. at 1209, 43 S.W.2d at 772. Answering, the court said: "We may readily agree that

under the general law the relation of employer and employee did not exist between William Pruitt and his minor son . . . ; that no contract of employment, express or implied, existed, and that William Pruitt did not in fact and was under no legal obligation to pay plaintiff for his work . . This case does not, however, involve the question of liability for wages between [claimant Ronie] and his father. The act . . . is, as its name indicates, a workmen's compensation act rather than an employees' compensation act.[1] That [claimant Ronie] was a workman engaged in work covered by this act, we think, is clear, whether the strict relationship of employer and employee existed or not." After quoting the statutory definition of "employee" [V.A.M.S. § 287.020(1)], the court continued: "The term 'employee' is thus given a broad meaning and includes every person 'in the service of any employer' and is not confined to those 'under any contract of hire,' express or implied, but also includes those performing service by 'appointment or election' . . . . 'The word "employee" shall also include all minors *who work for an employer*, whether or not such minors are employed in violation of law, and all such minors are hereby made of full age for all purposes under, in connection with, or arising out of this chapter' . . . . In cases arising under the Compensation Act, minors are deemed emancipated by operation of law." [2] Finally, the court emphasized "[t]his act should be liberally construed as to the persons to be benefited." [3] 328 Mo. at 1209–1210, 43 S.W. 2d at 772–773.

To us, it is clear that the very language of the governing statute [now V.A.M.S. § 287.040(1)] would not have permitted imposition of liability upon defendant Harker as statutory employer in Pruitt, supra, without a finding that, for the purposes of the Compensation Law, claimant Ronie was an *employee* of his father, and it is no less plain from the opinion that the court did find and declare that claimant Ronie was such *employee*. However, we need not rely upon our own judgment as to the substance and import of the holding in Pruitt, supra, for less than five years later the same division of our Supreme Court epitomized and explained that holding in Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 1005, 82 S.W.2d 909, 911–912: "In that case [Pruitt, supra] the minor son of an independent contractor was injured while working gratis for his father in the latter's enterprise. *This court held that the minor was an employee of the father by appointment,[4] engaged in carrying on the father's independent work then in progress, and therefore in the father's service as a workman and entitled to compensation. The status of employee and what constitutes the same was*

---

1. This has been reiterated in several Missouri cases. See Patton v. Patton, Mo., 308 S.W.2d 739, 746; Soars v. Soars-Lovelace, Inc., 346 Mo. 710, 718, 142 S.W.2d 866, 870(6); Chambers v. Macon Wholesale Grocer Co., 334 Mo. 1215, 1225, 70 S.W.2d 884, 888; Schultz v. Moerschel Products Co., Mo.App., 142 S.W.2d 106, 109; Friede v. George Lytle, Inc., 235 Mo.App. 64, 71, 127 S.W.2d 40, 44.

2. V.A.M.S. § 287.020(1); Sommers v. Hartford Accident & Ind. Co., Mo.App., 277 S.W.2d 645, 649(7).

3. To the same effect, see Pratt v. Reed & Brown Hauling Co., Mo.App., 361 S.W. 2d 57, 62; Stout v. Sterling Aluminum Products Co., Mo.App., 213 S.W.2d 244, 246(2); Baldwin v. Gianladis, Mo.App., 159 S.W.2d 706, 708(4); 99 C.J.S. Workmen's Compensation § 60b, p. 265. More generally, see V.A.M.S. § 287.800, as amended Laws 1965, p. 412; Patton, supra note 1, 308 S.W.2d at 746; Thompson v. Otis Elevator Co., Mo.App., 324 S.W.2d 755, 758(4); Friede, supra note 1, 235 Mo.App. at 73, 127 S.W.2d at 45 (5).

4. "Appointment" is defined as "[a] directing or ordaining," and "[d]esignation, command, order, direction" are listed among its synonyms. Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 977, 162 S.W.2d 628, 632 (a workmen's compensation proceeding); Webster's New International Dictionary (2nd ed.), p. 132.

*the primary question under consideration.* It is apparent that in determining such status any one making the appointment and receiving the services necessarily stands in the correlative relation of employer. No interpretation was given, or necessary, of the word 'service'[5] used, for that is a term having much the same legal connotations as the term 'employee.' The son was held to be within the purview of the act because he was a workman of his father in like manner as his adult coworkmen. So the essential terms of the act were not broadened by construction, but were harmonized, and *the word workman was held to be synonymous with the term 'employee,' and 'service' was marked as the distinguishing feature of each alike."* [6]

■ Furthermore, the court stated in Maltz, supra, 336 Mo. at 1006, 82 S.W.2d at 912(2), that "the framers of the act had in mind the law of master and servant and the relationship, duties, rights, and limitations arising out of the same," and that "[t]he relationship is bottomed upon services . . . to be rendered by the servant—whether by that name, or one synonymous, as workman or employee . . . —to the other, whether as master or employer, and is peculiarly characterized by right of control vested in the latter." [7] In determining whether the master-servant relationship exists in a given situation, the right of control is the "test often applied" [Hammonds v. Haven, Mo., 280 S.W.2d 814, 818(6), 53 A.L.R.2d 992] and the element "most frequently referred to" [Dean v. Young, Mo., 396 S.W.2d 549, 553] and

"really essential" to the relationship. 35 Am.Jur., Master and Servant, § 3, p. 445. And, as we have seen, the employer-employee relationship contemplated by the Workmen's Compensation Law likewise "is peculiarly characterized by right of control vested in the [employer]." Maltz, supra, and cases cited marginally in note 7. See also Nabors v. United Realty Co., Mo.App., 298 S.W.2d 474, 477(2); 1A Larson, Workmen's Compensation Law, § 43.10, 1. c. 624. In short, it is said that only two facts are necessary to an employer-employee relationship under the Compensation Law, namely, "one, that the claimant was in the service of the [alleged employer], and, two, that said services were controllable" by the latter. Saxton, supra, 410 S.W.2d at 375.

■ We are mindful that, in the case at bar, the alleged employer (the father) paid no "wages" or "regular compensation" to claimant (his son) and that the latter received only his "regular allowance." But even as the master-servant relationship may exist notwithstanding the fact that the servant neither expects nor is entitled to receive any compensation [Lajoie v. Rossi, 225 Mo.App. 651, 654–655, 37 S.W.2d 684, 687 (7); Kiser v. Suppe, 133 Mo.App. 19, 25, 112 S.W. 1005, 1007; Jones v. Goodson, 10 Cir., 121 F.2d 176, 179(3); 56 C.J.S. Master and Servant § 2e, 1. c. 39], so payment of wages or compensation, although *usually incident* to an employer-employee relationship, is *not always an essential element* thereof. Pruitt, supra, 328 Mo. at 1209–1210, 43 S.W.2d at 772–773; Schultz v. Moerschel Products Co., Mo.App., 142

---

5. "Service" has been defined as the "performance of labor for the benefit of another." Langley v. Imperial Coal Co., 234 Mo.App. 1087, 1092, 138 S.W.2d 696, 698 (a workmen's compensation proceeding); Webster's New International Dictionary (2nd Ed.), p. 2288. See Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S.W.2d 918, 922–923(11).

6. For other judicial statements concerning the holding in Pruitt v. Harker, 328 Mo. 1200, 43 S.W.2d 769, see Patton, supra

note 1, 308 S.W.2d at 746; Ellegood, supra note 4, 236 Mo.App. at 976–977, 162 S.W.2d at 632; Schultz, supra note 1, 142 S.W.2d at 109; Friede, supra note 1, 235 Mo.App. at 71, 127 S.W.2d at 44.

7. These statements are quoted with approval in Rutherford, supra note 5, 336 Mo. at 1179, 82 S.W.2d at 922–923; Soars, supra note 1, 346 Mo. at 718, 142 S.W.2d at 870; Voss v. Merchants Dairy Co., Mo.App., 373 S.W.2d 662, 665.

S.W.2d 106, 109. See Nabors, supra, 298 S.W.2d at 476–478.

■ All of this is not to suggest that, in the performance of every trivial or occasional act of assistance by a minor child in connection with a parent's business operation, such child becomes an "employee" within the contemplation and coverage of the Compensation Law. But the uncontradicted and unimpeached testimony in this case was to the effect that, although instant claimant did not work every day, he nevertheless made a hand as a workman in his father's business so that, after his accident, he was "replaced" by another male workman who was paid $70 per week; that claimant was "in the service of" his father [V.A.M.S. § 287.020(1)], i. e., he was engaged in the "performance of labor for the [father's] benefit" [Langley v. Imperial Coal Co., 234 Mo.App. 1087, 1092, 138 S.W. 2d 696, 698; Webster's New International Dictionary (2nd Ed.), p. 2288]; and that such service was both controllable and controlled by the father. With no indication of disbelief of that testimony by the fact-finding agency, the Commission's conclusion that claimant was not, at the time of his accident, an "employee" within the contemplation and coverage of the Compensation Law is not supported by competent and substantial evidence upon the whole record and cannot stand.

The only Missouri case (other than Pruitt, supra) cited to this point in employer's-insurer's brief is Knupp v. Potashnick Truck Service, Mo.App., 135 S.W.2d 1084, rejecting a claim by a so-called student truck driver, which is offered by counsel as relevant authority here on the unjustified and mistaken premise (so we think) that "viewing the evidence in its most favorable light for the claimant, the most that could be said would be that claimant was an apprentice or student employee in his father's business." Of the five foreign cases cited in employer's-insurer's brief, four patently could have no persuasive force here.[8] In the fifth case [Caldwell v. Caldwell, La.App., 55 So.2d 258 (1951)], there was a serious question as to the credibility of the minor claimant and his father, the alleged employer. 55 So.2d at 265–267. On the other hand, instant claimant's brief directs us to Harry Crow and Son, Inc. v. Industrial Commission, 18 Wis.2d 436, 118 N.W.2d 841 (1963), which is in complete accord with the holding of our Supreme Court in Pruitt, supra, and with our holding in this case. However, cases from other jurisdictions usually are of scant value in proceedings under our Compensation Law, because of differences in statutory provisions and judicial interpretations thereof [Baldwin v. Gianladis, Mo.App., 159 S.W.2d 706, 708], and certainly there is, in the case at bar, no need to seek or rely upon foreign authority.

In their effort to sustain the final award denying compensation, employer's-insurer's counsel present the further "point" that "the Industrial Commission might very well have based its award upon the additional reason that there was no convincing medical evidence that the fall relied on by [claimant] . . . was actually the cause of the disability for which compensation was

---

8. In Supornick v. Supornick, 175 Minn. 579, 222 N.W. 275, 277(2) (1928), a minor volunteering brief and uncompensated service was not an "employee" under a Minnesota statute specifically providing that "only those are employees who 'perform a service for hire' and to whom some 'employer directly pays wages.'" One of the stated reasons for denial of benefits under workmen's compensation acts in three cases [Aetna Life Ins. Co. v. Industrial Accident Commission, 175 Cal. 91, 165 P. 15, L.R.A.1918F, 194 (1917); Holt County v. Mullen, 126 Neb. 102, 252 N.W. 799(3) (1934); Estes v. Estes, 15 N.J.Misc. 305, 191 A. 107(2, 3) (1937)] was the fact that, in each instance, claimant was an *unemancipated* minor. In Missouri, minors are emancipated by statute "for all purposes under, in connection with, or arising out of" the Compensation Law. V.A.M.S. § 287.020(1).

claimed." Claimant sought, and the referee awarded, compensation for permanent partial disability of the right leg at the hip level. The medical evidence showed that such permanent partial disability as claimant might have in that member was the result of "a slipped caputal femoral epiphysis" or, in more understandable terms, a slipping of "the growth center of the head of the femur." Employer's-insurer's theory is that this occurred when, as claimant was walking on crutches three days after application of a cast immobilizing his right knee, he lost his balance and fell because (as claimant explained) "I got my crutches caught in some kind of hole or something."

■ For the purposes of this opinion, it will suffice to say that, in our view of the evidence, different inferences reasonably might have been drawn and different conclusions fairly might have been formed on this disputed issue of fact as to whether claimant's "slipped caputal femoral epiphysis" was caused by the accident of August 13 or by claimant's subsequent fall on crutches. But regardless of whether the Commission "might very well" have found that the accident of August 13 was not "actually the cause of the disability for which compensation was claimed," it neither reached nor ruled this disputed issue of fact but denied compensation on the sole ground that claimant was not an "employee" of his father—a conclusion predicated (as the Commission's written opinion discloses) upon a misconception of the holding in Pruitt, supra. In these circumstances, we have no authority to make an initial finding on this disputed issue of fact [V.A.M.S. § 287.490; State ex rel. Randall v. Shain, 341 Mo. 201, 108 S.W.2d 122, 128(7, 8); Burgstrand v. Crowe Coal Co., 333 Mo. 43, 62 S.W.2d 406, 409(9); Teague v. Laclede-Christy Clay Products Co., 331 Mo. 147, 52 S.W.2d 880, 882(1)] and no right to declare as a matter of law that there was no causal connection between the accident of August 13 and claimant's alleged permanent partial disability. Meintz v. Arthur Morgan Trucking Co., 345 Mo. 251, 258, 132 S.W. 2d 1010, 1014; O'Neil v. Fred Evens Motor Sales Co., Mo.App., 160 S.W.2d 775, 779 (9); Schmidt v. Adams & Sons Grocer Co., Mo.App., 377 S.W.2d 564, 566(2).

■ Furthermore, employer's-insurer's point under discussion completely ignores the obtruding question as to whether or not such disability as may have resulted from claimant's subsequent fall on crutches was a compensable consequence of the accident of August 13. "An injury following a second incident or accident may . . . be the legitimate consequence of the first accident if it results from or is contributed to by a condition brought about by the first accident. Whether this is so is also a question of fact for the Commission, to be determined from all the facts and circumstances in the case." Oertel v. John D. Streett & Co., Mo.App., 285 S.W.2d 87, 97(2). Otherwise stated, " 'injuries which follow as legitimate consequences of the original accident are compensable, and such accident need not have been the sole or direct cause of the condition complained of, it being sufficient if it is an efficient, exciting, superinducing, concurring, or contributing cause; thus it is immaterial whether or not a disability results directly from the injury or from a condition resulting from the injury.' " Manley v. American Packing Co., 363 Mo. 744, 749, 253 S.W.2d 165, 169(3). See Wilson v. Emery Bird Thayer Co., Mo.App., 403 S.W.2d 953, 958(7, 8); 1 Larson, Workmen's Compensation Law, §§ 13.00 to 13.12, incl., pp. 192.59 to 192.77, incl.

■ Of course, upon rehearing the credibility of the witnesses and the weight of the evidence will be for the Commission [Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5, 12(3); Yancey v. Egyptian Tie & Timber Co., Mo.App., 95 S.W.2d 1230, 1231(2)], and nothing herein should be misconstrued as suggesting what the Commission's findings and award upon rehearing should be. Smith, supra, 361 Mo. at 898,

901, 237 S.W.2d at 87, 89(5); State ex rel. Melbourne Hotel Co. v. Hostetter, 344 Mo. 472, 126 S.W.2d 1189, 1192(3); Williams v. Laclede-Christy Clay Products Co., Mo. App., 227 S.W.2d 507, 509(1). However, we are in no doubt but that, upon the record before us, the final award of the Industrial Commission denying compensation and the judgment of the Circuit Court of Jasper County affirming that award should be set aside and for naught held, and that the cause should be remanded to said circuit court with directions to remand it to the Industrial Commission for further proceedings not inconsistent with this opinion. Accordingly, it is so ordered.

HOGAN and TITUS, JJ., concur.