Effie MEILVES, Respondent,

v.

M. E. MORRIS, Treasurer of the State of
Missouri, as Custodian of the Second
Injury Fund, Appellant.

No. 52702.

Supreme Court of Missouri,
Division No. 2.

Jan. 8, 1968.

Harry J. Nichols, St. Louis, for respondent.

Norman H. Anderson, Atty. Gen., Jefferson City, Irving L. Cooper, Special Asst. Atty. Gen., Clayton, for appellant.

EAGER, Judge.

This is an appeal by the custodian of the "Second Injury Fund" from an award in a Workmen's Compensation claim against that fund. The award was upheld by the Circuit Court. We have jurisdiction because a State Officer, as such, is a party. Grant v. Neal, Mo., 381 S.W.2d 838; Stewart v. Johnson, Mo., 398 S.W.2d 850. In essence, the applicable statute, § 287.220, RSMo 1959, V.A.M.S., provides that if an employee has a "permanent partial disability, whether from compensable injury or otherwise, * * *" and thereafter receives a subsequent compensable injury resulting in additional permanent partial disability, the employer shall be liable only for that percentage of disability which would have resulted from the last injury, and the remainder shall be determined and paid out of the "Second Injury Fund." That fund is maintained from a portion of the proceeds of a tax on all insurance carriers under § 287.710.

Counsel for the claimant complains that the Points in appellant's brief are merely abstract; he has filed no motion to dismiss. From an examination of the Points and the argument of appellant the contentions are obvious, and the matter needs no further discussion. In view of the nature of the case and the contentions made, the Points appear to be sufficient in any event.

The claimant, Effie Meilves, 78 years of age at the time of her injury in July, 1963, and nearly 81 at the time of the hearing, was employed as a cleaning woman by the St. Louis Visiting Nurses' Association. She cleaned the desks and chairs and the nurses' room and, upon occasion, cleaned the venetian blinds by washing them while standing on a ladder. For about two years prior to July, 1963, she had worked only one day a week at $8.60 per day; previously she had worked three days a week. The failure of counsel to show the reason for this change has been very material to our consideration. The claimant performed her work with complete satisfaction to the employer and without any complaints on her own part; she worked regularly from 8:00 a. m. to 4:15 p. m., with 30 minutes for lunch, and she was on her feet "quite a bit." She had worked for the same employer for nearly twenty-five years.

On July 18, 1963, she slipped and fell in her place of employment. The employer and employee conceded in the original proceedings that the claimant sustained a fall on the date in question. We must more or less infer that fact as between the present parties. The claimant was not asked about the fall when she testified, and the evidence of one of her supervisors concerning the fall was excluded as hearsay. All the facts, however, including the evidence of hospital and medical treatment and the Workmen's Compensation documents and findings, are sufficient for this purpose.

Claimant's injuries from the fall consisted principally of a fracture of the right shoulder and fractures of two bones of her right wrist. The result was a limitation of motion and of rotation in the right shoulder, with stiffness and periodic pain, a 5°–10° "flexion deformity" of the right elbow, a radial deformity of the right hand at the wrist with limited motion of the wrist and recurrent pain, and an inability to close the right hand so as to "make a fist," because of stiffness of the fingers. The claimant never went back to work. While the appellant denies the existence of total and permanent disability since the fall, there was ample evidence to sustain the finding so made. Following the injury, the claimant settled with the insurer of her employer for *that injury*, and thereafter filed the present claim against the Second Injury Fund. The settlement, approved by the Commission, was based upon a permanent disability of 20% of the right arm at the

shoulder and wrist, and 15% at the elbow. The total payment made was $1,671, in addition to the medical aid.

Claimant was examined by two physicians prior to the hearing on the present claim,— one of her own choice and one chosen by counsel for the fund. X-rays were taken. These examinations were made, respectively, on April 26, 1965, and on March 2, 1965. Sundry ailments and degenerative conditions were found, obviously of long standing, and the inference is clear that they existed prior to July 18, 1963. They were, in substance, as follows: her heart was enlarged, her blood pressure was high, being 200/120 on one examination and 225/140 on the other, she had hypertension, generalized arteriosclerosis, a moderate kyphosis of the dorsal spine and a right dorsal and left lumbar scoliosis. Her back motions were limited; the x-rays showed an anterior wedging of several middorsal vertebrae, secondary to "senile osteoporosis," and an atrophy of the musculature of the shoulders and arms. The wedging of the vertebrae had caused the claimant to have a "humpback" appearance; she also had some edema in her left lower leg and ankle, and poor circulation in her feet. One physician testified that she was totally and permanently disabled and no longer employable; the other thought that she could still do such work as she had been doing for the last five years. The wedging of the vertebrae, supposedly resulting from "wear and tear," was of the same general type as are traumatic compression fractures in that region. One doctor stated that her condition prior to the injury constituted an "unratable" disability. The claimant testified that she could not do the work of her prior employment after the injury because she could not wring out the rags.

The appellant disclaims liability primarily upon the theory that any disability existing prior to the accident must have been *industrially disabling* before it may be combined with the results of the later accident (for the present purposes), whereas this claimant was not so disabled. Counsel for the claimant concedes the requirement of industrial disability, but insists not only that claimant was totally and permanently disabled after the accident, but that she was permanently and partially disabled, industrially, before that time by reason of her various bodily infirmities and diseases.

The findings of the referee (affirmed by the Commission and the Circuit Court) were that claimant had sustained an accident out of and in the course of her employment and that this injury, in and of itself, resulted in a 50% permanent partial disability of the right arm at the shoulder (116 weeks at $16 per week), which disability, together "with her previous disabilities due to the infirmities of advancing years, has resulted in permanent total disability." Since claimant had already settled her claim against the employer, the referee assessed the remainder of the 300 weeks' compensation (184 weeks at $16 per week) and the pension of $18 per week thereafter for life, against the Second Injury Fund. It is from this award that the Treasurer appeals.

■ It is hardly necessary to repeat the principle so often laid down in the review of such awards, namely, that the Court should determine whether the award is supported by competent and substantial evidence on the whole record, and whether the Commission could have reasonably made its findings and reached its results on the evidence; and that, if such be not true, or if the decision is contrary to the overwhelming weight of the evidence, the Court may and should modify, reverse, remand or set aside the decision, remembering, however, that it may not substitute its own judgment on the evidence for that of the Commission. Jacobs v. Bob Eldridge Const. Co., Mo.App., 393 S.W.2d 33; Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Conley v. Meyers, Mo., 304 S.W.2d 9.

■ We have no doubt that the Commission could reasonably find, as it did, the existence of total and permanent disability at all times after claimant sustained her fall in July, 1963. Since the parties agree

on the controlling law, i. e., that the prior disability must have been *industrially disabling*, we have one rather narrow issue to determine. In Wilhite v. Hurd, Mo., 411 S.W.2d 72, the Court ruled that any prior disability must have been of that character in order to charge the Second Injury Fund. The Court there said, in part, at loc. cit. 77: "The pre-existing permanent partial disability necessary to compensation from the Second Injury Fund under Section 287.220, V.A.M.S., relates to disability to work and means 'industrial disability' or loss of earning capacity, rather than physical impairment as such. Diederich v. Tri-City Ry., 219 Iowa 587, 258 N.W. 899, 902[2]; 99 C.J.S. Workmen's Compensation § 296, p. 1035." The "second injury" statutes vary widely in their requirements from state to state. California and Minnesota, like Missouri, hold that any prior disability must be such as to partially disable the claimant from work, or to impede his labors. Ferguson v. Industrial Accident Commission, 50 Cal.2d 469, 326 P.2d 145; Rikala v. Rundquist Construction Co., 247 Minn. 401, 77 N.W.2d 551; the California statute expressly requires that the prior disability be "labor disabling." In all probability it would be found that various states follow the same rule, either by statute or judicial decision. Some idea of the divergence in the terms of the statutes may be seen from examining 101 C.J.S. Workmen's Compensation § 837, p. 147 et seq., and Larson on Workmen's Compensation (1952), Vol. 2, § 59.30, p. 58 et seq. Some require that the prior disability shall have resulted from a compensable injury; Missouri has expressly rejected that view by the very terms of its statute. Some statutes require that the prior disability must have affected the claimant's earning power. Missouri has ruled the point and we need go no further.

The purpose of these statutes is to make it more probable that employers will hire handicapped persons; this, because with the Second Injury Fund available, the employer may thus be reasonably certain that he will not be adjudged liable for the entire terminal condition of disability, under the circumstances provided for by the statute. Federal Mutual Ins. Co. v. Carpenter, Mo., 371 S.W.2d 955; 99 C.J.S. Workmen's Compensation § 298, p. 1047 et seq.

Aside from Wilhite, supra, the Missouri cases which have dealt with the second injury statute do not affect our issue in any way. Grant v. Neal, Mo., 381 S.W.2d 838; Stewart v. Johnson, Mo., 398 S.W.2d 850; Cole v. Morris, Mo., 409 S.W.2d 668; Federal Mutual Ins. Co. v. Carpenter, Mo., 371 S.W.2d 955; Buzzard v. Morris, Mo., 410 S.W.2d 71. There is no doubt here that the claimant did have various substantial bodily infirmities prior to the injury of July, 1963; in part, at least, these were due to her age. These infirmities could well have affected her ability to work and her earning capacity; they could have caused her to do less work or to work only part time; thus, they might have been industrially disabling to some extent. The practical difficulty here is that *no one* offered the slightest bit of evidence on this controlling issue and we are left to speculation. The plaintiff testified, as did a representative of her employer. Neither was asked, nor did she testify, *why* the claimant was working only one day a week, or *why,* about two years before her injury, she had ceased working three days a week. Her work, for one day a week, continued to be entirely satisfactory; and while we do not penalize the claimant for failing to *complain* of her ailments, the fact is that she made no complaint.

■ The statute, § 287.020(8), and some of our cases attempt to define total disability. Groce v. Pyle, Mo.App., 315 S.W.2d 482; Vandaveer v. Reinhart & Donovan Construction Co., Mo.App., 370 S.W.2d 156; Kateman v. Zink et al., 238 Mo.App. 253, 180 S.W.2d 253. If the claimant was prevented by bodily infirmities from performing a part of the usual and customary duties of her occupation or of any other

occupation for which she was reasonably suited so that her *earning power* was thereby affected, or more specifically if she was *thereby* caused to work only part time,— she was partially disabled, *industrially*. See Wilhite, supra.

■■ The burden is on the claimant to prove all material elements of her claim. Dixon v. Art Bunker Motors, Inc., Mo.App., 387 S.W.2d 199; Simmons v. Mississippi River Fuel Corp., Mo.App., 43 S.W.2d 868. Having failed to produce substantial evidence of any industrial disability prior to July 18, 1963, she has failed to establish her claim. We thus rule, in accordance with § 287.490, that in the respect noted there was not sufficient competent evidence in the record to warrant the making of the award. However, in view of the nature and type of the evidentiary deficiency, and in our discretion as granted in that section, we shall set aside the award but order the matter remanded to the Industrial Commission in order that the parties may be offered an opportunity to supplement the evidence in the respect herein discussed. In such event, the evidence previously taken need not be repeated; the Commission should make a finding upon the issue of prior industrial disability from all the evidence. Such a remand is proper under our adjudicated cases, as well as by the express terms of the statute. Stepaneck v. Mark Twain Hotel, Mo.App., 104 S.W.2d 761; Friede v. George Lytle, Inc., 235 Mo.App. 64, 127 S.W.2d 40; McWhorter v. White Baking Co., Mo.App., 81 S.W.2d 992; Fear v. Ebony Paint Mfg. Co., 238 Mo.App. 560, 181 S.W.2d 559; Kristanik v. Chevrolet Motor Co., 335 Mo. 60, 70 S.W.2d 890, loc. cit. 894.

The judgment of the Circuit Court is reversed, and the cause is remanded to it, with directions to remand to the Industrial Commission for further proceedings in accordance with this opinion.

All of the Judges concur.